IN THE

# SUPREME COURT

OF THE

## STATE OF NEW-YORK,

IN OCTOBER TERM, 1847.*

---

### THE PEOPLE vs. LAMBIER.

A statute conferring privileges upon individuals should not be so construed as to work a public mischief, unless required by explicit and unequivocal language.

Accordingly where an act of the legislature authorized a proprietor of lands lying on the East river, which is an arm of the sea, to construct wharves and bulkheads, in the river, in front of his land, and there was, at that time, a public highway through said land, terminating at the river; *held* that such proprietor could not, by filling up the land between the shore and the bulkhead, obstruct the public right of passage from the land to the water; but that the street was, by operation of law, extended from the former terminus, over the newly made land, to the water.

Where alluvial additions are made, by natural causes, to the shores of navigable waters, the land thus formed belongs to the proprietor of the adjoining land. *Per* BEARDSLEY, C. J.

One who conveys land in the city of Brooklyn bounding the purchaser by a street designated on a map filed by the commissioners appointed under the act of 1835, (*Stat. p.* 23,) thereby dedicates his adjoining land on the site of the street to the public use.

---

*Owing to the changes on the bench, the cases which would regularly have been decided at the last July term were determined in the preceding vacation. This accounts for there being no reports of cases decided at the July term.

CERTIORARI to the oyer and terminer of the county of Kings. The defendant was indicted in the oyer and terminer in April, 1845, for the offence of nuisance. The indictment alleged that on the 15th day of March, 1845, at the sixth ward of the city of Brooklyn, in a certain street there called Warren-street, being the common highway of the people, &c. the defendant did erect, &c. and place certain buildings and fences, and therein permitted and suffered the same to be and remain; whereby the said highway was obstructed, &c. to the common nuisance, &c. The defendant pleaded not guilty.

On the trial, in December, 1845, Edmonds, circuit judge, pre-siding, it was proved that in and prior to the year 1835, Parmeneus Johnson was seized of a piece of land in the city of Brooklyn, lying upon the East river and extending back some distance from the river. By an act passed in 1833, (*Stat. p.* 499,) the president and trustees of the then village of Brooklyn were authorized to open streets; and on their petition commissioners of estimate and assessment were to be appointed and their report was to be confirmed by the common pleas of Kings county, or by the supreme court. Pursuant to this act Warren-street was laid out, commencing at Court-street and extending westerly through said Johnson's land to the East river. The proceedings were confirmed by the supreme court in August, 1835.

By an act passed April 23, 1835, the governor was authorized to appoint, on the application of the mayor and common council of the city of Brooklyn, three commissioners, who were empowered to lay out streets, avenues and public squares in that city, and to make and file triplicate maps, showing the existing streets, avenues and squares, and also those which they should lay out; and it was provided that the maps when completed should be "final and conclusive" as to the city corporation, the proprietors of land, and all other persons. (*Stat.* 1835, *p.* 136.) The act was limited to two years; but it was extended by subsequent acts. (*Stat.* 1837, *p.* 75; *id.* 1838, *p.* 121.)

On the 25th of May, 1836, an act of the legislature was pass-

ed authorizing several persons, among whom was Parmenus Johnson, to erect wharves bulkheads and piers on the land under water in front of their lands in the city of Brooklyn. A line in the river was designated beyond which these erections were not to extend, and it was provided that nothing in the act should affect the rights of the corporation of the city of New-York in respect to the lands between high and low water mark along the Brooklyn shore of the East river. (*Stat.* 1836, *p.* 739.) Pursuant to this act, a bulkhead was erected in the East river in front of Johnson's land, and the space between it and the hard land was filled up with earth from the shore, so as to extend the shore or margin of the river from its former line to the bulkhead.

Commissioners were appointed under the act of 1835, and in the execution of their duties they made a map, upon which Warren-street was laid down as extending from Court-street on the east, in a straight course to a line in the East river, where, by the act of 1836, the bulkheads, &c. were to be placed; and the bulkhead was delineated on the map. As thus laid down, Warren-street was continued from its original termination at the East river across the land so filled in, or which was to be filled in by Johnson, to the bulkhead. A street called Columbia-street was also laid down on the map, crossing the extended part of Warren-street at a right angle on the land so made or to be made by filling in between the bulkhead and the original shore. By an act passed February 28, 1839, (*Stat. p.* 36,) the proceedings of the commissioners, and their maps and notes, were " confirmed and declared valid and effectual to all intents and purposes whatsoever."

The prosecution gave in evidence sundry acts of Johnson and of the defendant to show a dedication of the extension of Warren-street through the new made land to the public. It appeared that Johnson had agreed to convey a portion of this land to pay the expenses of the filling up, and accordingly on the first day of February, 1841, he executed a deed in fee simple to one Carrigan, of all his land between the southerly line of Warren-street on the south, an adjoining proprietor on the

north, Columbia-street on the east, and " the exterior water line as established by an act of the legislature of the state of New-York, passed May 25, 1836," on the west. In this deed Warren-street was referred to as follows : " as the same is laid down on a map made by the commissioners appointed for laying out the said city of Brooklyn now on file," &c. The deed also conveyed six building lots on the opposite side of Warren-street, bounded northerly on the southerly line of Warren-street, southerly on the centre line between that street and Baltic-street, which is the next street south of and parallel to Warren-street, and easterly and westerly by lines running at right angles with Warren-street, the upper or easterly one being one hundred and eighty-nine feet west of Columbia-street. Carrigan, the grantee in this deed, on the third day of July, 1842, conveyed to William Lambier, jun. the land described in it, except the six lots on the southerly side of Warren-street, and six building lots on the northerly side, the upper or easterly line of which last mentioned six lots was one hundred and fifty feet westerly of Columbia-street. On the 19th day of April, 1843, W. Lambier, jun. re-conveyed to Carrigan the land which had been conveyed to him by the last mentioned deed, and on the 19th day of February, 1844, Carrigan conveyed the same to the defendant William Lambier. After this the defendant erected a building in Warren-street, as extended, just below where the same is intersected by Columbia-street, and of course upon the newly made land.

The defendant insisted ; 1. That the commissioners appointed under the act of 1835, had no authority to extend a street beyond low water mark, over land covered with water, as it was contended this was when the street was laid out. 2. That the laying down of Warren-street on the city map, as extending from high water mark to the line established for building docks, did not extend Warren-street to the bulkhead. 3. That unless the jury should be satisfied that the alleged nuisance was located above the line of low water mark, as it was at the time of making the city map, the defendant was not guilty. The court declined thus to hold or charge, but instructed the

The People *v.* Lambier.

jury that Warren-street from its eastern terminus to the bulk head was, by virtue of the original laying out of Warren-street and by the acts of the commissioners under the statute of 1835 a public street or highway, and that the only question for then to determine was whether the building, the erection of which was complained of, was on the ground thus made a highway. The defendant excepted to the refusal to charge and to the charge given. The jury found the defendant guilty.

*J. Greenwood,* for the defendant. 1. Warren-street is not a highway below high water mark. As originally established it terminated at the East river. A grant of land bounded by tide water does not confer any title below high water mark, unless there are express words to the contrary, and the terminus of a street is equally incapable of being extended beyond the designated point. The whole East river to the original high water mark on the Brooklyn shore is within the jurisdiction of the city and county of New-York, and the authorities of Brooklyn had no jurisdiction over the subject. 2. By the original opening of Warren-street the public acquired only an easement over the land of Johnson. He remained the owner of the fee, and was at the same time seized of the land on each side of the street. The act of 1836 gave him the same right to the land which he was authorized to make between the bulk-head and high water mark as though Warren-street had never been laid out. 3. Warren-street has never been legally extended over the premises in question. The authority of the commissioners did not extend to creating a new street. They could only designate the location on which a street might be made. Other acts were necessary before it would become a street. But the authority of the commissioners was limited to the city of Brooklyn, and this was in the city of New-York. 4. The act confirming the proceedings and maps of the commissioners does not aid the prosecution. That act only establishes what had been legally done; but if it confirms the location of the street to the bulkhead, still, as before remarked, it only operates

as an authority to the common council of Brooklyn to open a street there.

*A. Campbell,* (district attorney,) & *J. M. Van Cott,* for the people. 1. The act of 1836, authorizing Johnson and others to build a bulkhead, did not permit them to intervene between the terminus of the street and the water. The courts should lean strongly against a construction which would work a deprivation of a great public right. 2. There has been a dedication of the *locus in quo* to the public.

BEARDSLEY, Ch. J. East river is an arm of the sea which the public have a right freely to navigate at all times, as their business or pleasure may require or dictate. Warren-street, as originally laid out and opened, extended from Court-street to the East river; and the legality of this street as so established not being drawn in question, it may be assumed that here was a continuous public way upon, as well as between, the street and the river. This being indisputable, looking to the state of things which immediately followed the opening of Warren-street, it becomes necessary to inquire whether this right to pass directly from the street to the river and from the river to the street, has since been destroyed.

It was argued at the bar that the continuity of this way was sundered by filling in with earth the space between the original terminus of the street and the bulkhead in front, as authorized by the act of 1836, over which new made land, as was strenuously contended, no right of way whatever existed.

The act of 1836 authorized the several persons therein named or otherwise indicated, to construct and maintain in the East river, " wharves, docks, bulkheads and piers, on the land under water in front of their lands in the city of Brooklyn," and receive dockage and wharfage for the use of the same; but such wharves and bulkheads were not to extend into the river beyond a line specified in said act. (*Laws of* 1836, *p.* 739, § 1.) Parmenus Johnson, one of the persons named in this act and to whom this privilege was given, then owned, as he had done

at the opening of Warren-street, the preceding year, the same piece of land through which that street passed, and under the authority of said act he erected a bulkhead in the river in front of his land, including that covered by the street, filling up the intervening space with earth so as to transfer the shore of the river to the bulkhead, instead of remaining where it was at the time of opening Warren-street. The distance to which the shore was thus advanced into the stream of the river does not appear in the bill of exceptions, nor, in our view of the law of the case, is it material to be ascertained; for, whether the distance was ten feet or ten hundred, we think this extension of the main land to the bulkhead carried with it a corresponding extension of the street, the bulkhead having now become for all purposes the shore of the river.

The design of this act of 1836 was to confer privileges on the owners of land adjoining the East river, but not to destroy the right of the public to reach its waters through Warren or any other street which then led to its shore; nor should the act be so construed as to work a public mischief unless required by words of the most explicit and unequivocal import. (*Sprague* v. *Birdsall*, 2 *Cowen*, 419; *Martin* v. *Waddell*, 16 *Pet.* 367.) Here the words do not call for any such construction. There was nothing compulsory on the owners of these lands, for they were as free to refuse as to accept the privileges offered to them. In terms the act authorized piers and bulkheads to be erected, and the bed of the river to be filled up, in front of *their* lands. In strictness this could hardly be understood to include land over which a perpetual right of way existed in favor of the public, although the fee might be in such owners. At all events, if the terms of the statute are to be understood as authorizing a bulk head to be erected in front of the terminus of Warren-street on the shore of the river, and the intervening space to be filled up and made solid ground, the words used do by no means necessarily or naturally import that the right of passage from the street to the river should be thereby annihilated. In an act, designed chiefly if not exclusively to subserve individual interests, the words used must leave no doubt that the legisla-

ture intended to annihilate or abridge an important public right, before a court should put such a construction upon it as would have that effect. Public burthens are not to be imposed, nor public rights destroyed, by equivocal words or provisions.

It would be an unusual event, to say the least, for the legis lature at any time to cut off access through a public street to an arm of the sea; and it would be truly extraordinary to hold that such would be the effect of general words in an act granting privileges to particular individuals. We cannot suppose such to have been the intention of the legislature in passing the act of 1836. Had such been the design it would have been plainly expressed, and not left to be gathered, if at all, from general and equivocal words or phrases.

The washing of the river might have left a deposit of earth in front of this land of Johnson, and in process of time have carried the shore out to its present site, the bulkhead. Changes of this description, the results of natural causes, are constantly going on at various places. It is entirely settled that these alluvial additions become the property of the owner of the land against which the deposit is made; (*Angell on Tide Waters, ch.* 5;) and it would hardly admit of a question that in such a case, a public street leading to navigable waters would keep even pace with the extension of the land, so as to preserve an unbroken union between the easement on land and that on such navigable waters. And if this consequence would follow from a change in the land by the action of natural causes, we think it must also be held to follow from one made by the immediate and voluntary act of the owner of the land on the shore in its original condition.

When the act of 1836 was passed, the public had a right to navigate the waters of the river in front of the shore along the land of Johnson as it then was, and consequently had such right directly in front of the terminus of Warren-street. This right of navigation, as to the whole space to be filled up, was relinquished by the act, for its enjoyment would be impractica- ble when the work was completed. But it is not to be assumed without express words in the act to that effect, that it was also

The People *v.* Lambier.

intended to surrender the right to pass directly between the street and the river, and as this could only be done by extending the street over the new made land, that result must be taken to have followed from this substitution of land for water.

This being our opinion of the law of the case, it is unnecessary to inquire whether what was done by the commissioners appointed under the act of 1835 would, had that been necessary, have carried Warren-street out to the bulkhead as erected under the act of 1836. And for the same reason we are relieved from expressing any opinion upon the evidence of a dedication of that strip of land to the public use. Our decision of the case is made on the ground first stated, and we hold that the filling up by Johnson of the river in front of Warren-street carried with it a necessary and legal extension of the street over the new made land and to the shore of the river at the bulkhead. This street was laid out and opened as a public way from Court-street to the river, thus connecting the right of passage on the land with a like right on the water. And although the owner of the land on the shore has, for his own benefit, filled up the water way in front of the original terminus of the street, this should not be allowed to destroy the right to pass directly between the street and the river, a result which can only be attained by an extension of the street commensurate with that of the now solid, but new made, ground.

We express no opinion upon the particular views stated by the court below in deciding the questions as presented. We agree in the result at which that court arrived, and hold, as was there decided, that the place at which the obstruction was placed by the defendant, was a part of Warren-street. He was therefore guilty of a nuisance as charged in the indictment, and the verdict of the jury was correct.

McKissock, J. concurred.

Whittlesey, J. Warren-street was laid out and opened as a street only to the East river so far as it was done by the act of the common council of Brooklyn. The act under which

the street was so laid out and opened was that of April 30, 1833, (*Laws of* 1833, *p.* 499,) and the proceedings were duly confirmed by the supreme court in 1835. The street thus laid out and opened extended only to the river. Johnson owned the lands on both sides of this street at the bank of the river. The act of May 25, 1836, (*Laws of* 1836, *p.* 739,) authorized him to construct wharves, &c. in front of his land. I think this act authorized him so to fill in, not only in front of the land on each side of Warren-street, but in front of Warren-street itself. The fee of the land covered by Warren-street was in him subject to the easement of the highway, and he may, therefore, be said to own the land and have the right to fill up in front of it. I do not think either that Warren-street as laid out, opened and confirmed by the supreme court in August, 1835, extended by the force of such original laying out and confirmation across the land so filled in. There was unquestionably originally necessary estimates and assessments of the benefits and damages upon opening Warren-street, so that the owners of lands taken could obtain compensation, and the property benefited be charged with the expense. This esti- mate and assessment extended only to the East river as it then was, and if the street was to be continued across the space filled in, a new estimate and assessment might be necessary. It is true if Johnson owned the whole land so filled in, the land taken for such extension of the street would be his, and his would be the lands benefited by such extension of the street; so that if he continued the owner it would be his own land that would be taken, and his own land to be charged with the expense, and the burden of opening the street would fall wholly upon him. A sale of a portion of the land before any steps were taken to open the street, might introduce other rights and interests, either liable to pay damages or entitled to recover them, unless the opening of the street was provided for in the grant of such portion either expressly or by implication. The commissioners, under the act of April 23, 1835, (*Laws of* 1835, *p.* 136,) who extended Warren-street, on the map which they were authorized to make, to Johnson's extreme line, when he

The People *v.* Lambier.

had erected his exterior bulkhead, did not, by so mapping a street thus extended, actually create and open a street thus extended, so that the public could travel upon and use it without any further steps being taken. Nor did the act of February 28, 1839, (*Laws of* 1839, *p.* 36,) confirming these proceedings, have any such effect. The whole effect of the acts of these commissioners was to determine where the streets should be; and when the extension of the city demanded the opening of new streets, they were to be opened according to the map of these commissioners; but if such theoretical streets crossed lands not appropriated for or dedicated to such purpose, there must be the usual estimate and assessment before the private right of property in such streets could be divested. It was precisely so with this extension of Warren-street. When the exigencies of the city required the extension to be opened, it was to be opened in the manner laid down on the commissioners' map, but the owner of the land thus appropriated would be entitled to compensation unless he had waived it by a previous dedication of the street to public use. The commissioners' map pointed out where the street was eventually to be. This map was a matter of record.

It has repeatedly been held that if a proprietor of lands through which such mapped streets run, sells and conveys lots in reference to such map, recognizing by the boundaries of the lands granted, the existence of such mapped streets, such an act is a dedication of the designated street to the public use, to be opened whenever the municipal authorities think proper, without payment to the proprietor of any thing more than a nominal compensation. The principle is that the grantor of such lands or lots had an easement in such street, or a right to use it as a street by virtue of the grant bounding upon or recognizing it. (*Matter of Seventeenth-street,* 1 *Wend.* 262; *Matter of Lewis-street,* 2 *id.* 472; *Livingston* v. *The Mayor of New-York,* 8 *id.* 85; *Wyman* v. *The same,* 11 *id.* 486; *In the matter of Furman-street,* 17 *id.* 649; *In the matter of Thirty-second-street,* 19 *id.* 128; *Matter of Twenty-ninth-street,* 1 *Hill,* 189; *In the matter of Thirty-ninth-street, id.* 191.)

In this case Johnson conveyed to Carrigan all the land west of Columbia-street and north of Warren, including Warren-street, having reference to the commissioners' map, and making the south bounds of the grant the south line of Warren-street, as extended according to such map. If this was all the grant, it would present a state of facts different from any of the cases cited. And as the proprietor had thus conveyed the bed of the street, the effect of saying that by such conveyance the street was dedicated to the public, would be that Johnson, the grantor, would be entitled to have the street opened without paying any damages for the land to be taken. And Carrigan, the grantee, would, so far as he took the fee of the street, only take a mere naked fee and have been compelled to relinquish it for the purposes of a street, without compensation. This, as between him and Johnson would hardly have been equitable, and perhaps if this had been all the grant, the case would not have been brought within the principle of the cases cited.

But this is not the whole land conveyed by this deed. By the same deed Johnson conveys six lots on the south side of Warren-street as extended, being 150 feet front in all, and bounded by Warren-street. Carrigan, the grantee, was interested in the street by reason of these six lots. When Carrigan conveys to the defendant he not only excepts those six lots on the south side of Warren-street, but other six lots of the same front on the north side of Warren-street, both sets of lots having reference to the map of the commissioners. If there is no dedication by virtue of these grants, it will result that there is no street to these twelve lots, six on either side of Warren-street. This circumstance seems to me to bring this case within the principle of the cases cited, particularly that of *Thirty-ninth-street*, (1 *Hill*, 191,) and to authorize us to infer that Warren-street as extended, and as laid down on the commissioners' map, was dedicated to the public, the grantors of the other lots having a right to use it as a street; and hence an obstruction of it is an indictable offence, and a new trial should be denied.

New trial denied.