Mayor of Jersey City *v.* Morris Canal and Banking Co.

Between THE MAYOR AND COMMON COUNCIL OF JERSEY CITY appellants, and THE MORRIS CANAL AND BANKING COMPANY, respondents.

The act incorporating the Associates of Jersey City, after reciting, in the preamble, that the associates had become the proprietors, by purchase from Cornelius Van Vorst, of Powles-hook, bounded, &c., and the right and title of said Van Vorst under the waters of the Hudson river opposite the said land, as far as the right of the said Van Vorst extended, conferred upon the associates the power to hold the said land, with the privileges and appurtenances, and to make streets, and to order and regulate the building of docks, piers, and wharves, &c. The associates had a map made of Powles-hook, which is known as Mangin's map, and on this is delineated Hudson street seventy feet in width, and outside of this street, into the Hudson river, are delineated wharves, piers, and bulkheads. The legislature subsequently incorporated Jersey City, the territorial boundaries of which coincide with those of the associates. By subsequent legislation, in 1820, the power to make and regulate streets, wharves, &c., was taken from the associates, and conferred upon the city authorities. In 1828, the Morris Canal and Banking Company were authorized to continue their canal to the waters of the Hudson, at or near Jersey City. Where the canal connects with the Hudson it is located within the boundaries of Mangin's map. The company at this point made a large basin opening into the canal, which is connected by two piers. This basin occupies the south *terminus* of Hudson street, as represented on Mangin's map. The associates conveyed to the company all their right to the land upon which the canal was located. Hudson street, at the point where the basin was constructed, though marked out on the map as a street, had

been for many years lying under water, and had never been actually opened or used as a public highway. Within the last three or four years the company had extended their northerly pier further into the Hudson, and in doing so had crossed the line which is represented on said map as below low water mark, and at the end of that pier, and in the Hudson river had built an extensive coal wharf for the business of their canal. The common council of Jersey City passed an ordinance to extend Hudson street over the company's pier, and they admitted that it was their intention to remove the company's building and to convert a portion of the pier into a public street. The Chancellor, having enjoined this action of the municipal authorities, held—

1. That the power conferred by the legislature to extend the canal to the Hudson, and erect piers, wharves, and basins at Jersey City, did not operate as a grant by the state of the *locus in quo*, but was to be considered as a mere enlargement of the powers of the corporation.

2. That the deed from the associates to the company of the land in the street passed the land subject to the public right of way, and that the acceptance of such a deed was an assent by the grantee to the devotion of the land to the public uses named in it.

3. That lands lying under tide water may be dedicated as a public highway by the owner, with the assent of the state.

4. That the acts set up in the answer as done by the associates, in connection with the Mangin map, amounted to an immediate dedication of the whole of the ground marked upon that map as Hudson street, and that when any part was filled up it became *ipso facto* a public highway, and that a right to exclude the public therefrom could not be acquired by a mere conveyance of the fee by the associates to the company.

To adopt the doctrine held in one of the states, that the enclosure and occupation of land within the limits of a highway for twenty years, under a claim of right, will make a title by prescription as against the public, would be eminently disastrous to public interests.

The principles upon which the doctrine of dedication rests are peculiar. A dedication does not take place upon the idea that there has been a grant, for it may take place where there is no grantee in being to take at the time of dedication.

A dedication may be designed by the owner to be accepted by the public in *presenti* or in *futuro*.

The character and scope of the dedication depend upon the intention of the dedicator, expressly manifested or to be gathered from all the circumstances of the case.

*Query.* Has a canal company the legal right to construct a basin at the point of its intersection with a public street?

————

An injunction having been granted by the court below, this appeal was taken. The facts are fully stated in the opinions delivered. The opinion of the Chancellor will be found, *ante* 252.

The opinion of the court was read by

WHELPLEY, J. The appellants claim that a strip of land in Jersey City, seventy feet in width and about one hundred in length, lying between the waters of the Morris canal, when filled, and what is admitted to be Hudson street, in said city, constitutes a part and continuation of said street, and that it extends in a southerly direction to the canal, and across it to the waters of the bay of New York; that Hudson street, before the erection of the works of the respondents, terminated at tide water, and that it is now entitled so to terminate.

The respondents contend, that Hudson street does not extend to the waters of their canal or basin, but abruptly terminates some hundred feet short of that point; that in that direction it has no outlet; that such outlet to tide water is cut off by the lawful erection of their basin and piers under express legislative sanction.

They claim that the side of the basin, at this point, is what is known as a pier, and cannot be encroached upon by the appellants under pretext of laying out or opening a street; that it is, as a pier, a necessary appendage to their canal at this place, built and held by them under express legislative authority.

The canal at this place is widened so as to form a basin, and the land in question constitutes one side of that basin; the south bank of the basin is formed by a narrow strip of land filled in between the bed of the basin and the waters of the bay. If Hudson street be finished to the waters of this basin, or canal, and that be bridged, and the street further extended in a right line, as laid down upon the Mangin map, it will reach the waters of the bay, from which it has been cut off by the building of the basin. Both sides of this basin, the land in question, and the piers projecting into the river, have been built by the respondents in tide water.

I cannot perceive that the canal at this point differs

essentially from the canal at other points along its route, except that here it is wider and nearer its termination, and is more used for the loading and unloading of boats. It is here, as elsewhere, used for the passage of boats, as well as unloading them. It is in every sense a canal, or part of the canal, at this point; there are no natural obstacles to prevent the indefinite extension of this basin, both to the east as well as the west, until ample shore room is secured for the loading and discharging of the boats plying on the canal, or of those to be loaded with the coal brought down the canal. No necessity exists for cutting off the public from tide water at the end of this street. It may, perhaps, eventually become necessary to extend the basin further into the bay to meet the wants of the respondents' business. This may entail expense upon them, but does not show that the public right of passage to and over the canal at this point is at all inconsistent with the existence or security of the company's works or their beneficial enjoyment, if properly constructed. The canal is not destroyed by being bridged at other points along its route, and I am unable to see why a street coming to the edge of this basin, and even a bridge over it at this point, will do any more injury than deprive the company of a part of the rent of what is now used as a coal yard.

It will be at once perceived that the city did not, by the act complained of, call in question the right of the respondents to cross this street, as the same is called on Mangin's map, with their canal and basin, or to make it of such width as may be necessary. The legislature may authorize a canal to be cut across or down a public street whenever it may be necessary, or may vacate a part of a public highway, and devote it to other public uses, under the provisions of the constitution. That is not the question here.

The simple question is, have the respondents, either by direct legislative grant or by purchase from the Associ-

ates of the Jersey Company, acquired the right to the place in dispute, so as to cut off the right of the city to regulate the street called Hudson street at this point, as laid down upon the Mangin map, and cause it to be opened, paved, and provided with gutters.

The respondents have come into a court of equity to prevent irreparable mischief to a public work claimed to have been constructed by them in pursuance of law.

To entitle them to the interference of the court, they must show something more than mere possession. They claim the exclusive right as against the appellants; they must show it; the mere fact of prior possession is not sufficient; the appellants do not stand in the position of wrongdoers; they have the right to regulate and grade this portion of Hudson street, unless the respondents' rights are superior to theirs.

The power conferred by the legislature to extend the canal to the Hudson, and erect piers, wharves, and basins at Jersey City, did not operate as a grant by the state of the *locus in quo;* it was but a power conferred to do the acts named, and is to be considered as a mere enlargement of the powers of the corporation.

The legislature did not intend to grant what had been previously granted to the Associates of the Jersey Company—"all the rights of Van Vorst and of the state to the lands and premises described in his deed to the associates, including the right to the lands under water, subject to the public rights of navigation, vested by force of his deed and the act incorporating the associates for the purpose of laying out streets and squares, the erection of docks or buildings, or for any other lawful purpose, in the associates." *Associates* v. *Jersey City,* 4 *Halst. Ch.* 721.

It would seem clear that the general powers to construct these improvements and extend the canal to the Hudson river did not give to the respondents any title to the lands necessary for that purpose, whether above or below high water mark.

But the respondents claim title by grant from the associates by deed, dated May 26th, 1835. That deed purported to grant, bargain, and sell the water right of the Associates of the Jersey Company in front of lands therein described, being part of lands known by the name of the town of Jersey, formerly called Powles-hook, and which, on the map of the said tract, made by Joseph F. Mangin for the parties of the first part, are distinguished as follows, that is to say, all *the water right* in front easterly of *block number one,* designated and laid down on said map, and also all *the water right* in front of lots number nine, ten, eleven, and twelve *in Hudson street,* as laid down on the said map, and also all the water right on the south side in front of the said block number one.

It does not clearly appear why the grantors used different terms of description in the different deeds to the respondents—why the deed of the 19th March, 1835, purports to convey the lots by number, and that of the 26th May, 1835, only the water right in front of lots number 9, 10, 11, 12 in Hudson street.

By a grant of water, land covered by water will not pass, only the right of fishing in the water. 4 *Cruise* 52, *c.* 20, *p.* 49; 2 *Bla. Com.* 18, 19; *Burton* 550; *Co. Litt.* 4 *b.*

What passed by the term water rights in front of these lots in Hudson street?

The intention of the grantors to pass the land itself by the first deed is clear. It seems not so clear what passes by the term water rights in street in front of a lot.

What water rights in the street could the associates sell?

The terms used do not indicate an intention by the associates to destroy the public easement, even if at that time they had the power. A deed conveying land as a street, or in a street, which is the most favorable construction for these grantees, passes the land subject to the public rights. The acceptance of such a deed is an assent by the grantee to the devotion of the land to the

public uses named in it, and ought to conclude him as against the public.

In *Den ex dem. The Selectmen of Jersey City* v. *Dummer, Spenc. Rep.* 106, possession was recovered by the corporation of a public square, which the court held had been dedicated to public use as a "market ground." The same acts of the associates and their grantors were relied on in that case to prove a dedication as are set up in this case to establish the dedication of this part of Hudson street. The square had been marked upon the Mangin map as a public square; the map had been referred to in all the subsequent conveyances; the land was under water at the time the map was made, and was filled up by the defendant after the conveyance in 1824. The associates conveyed the square to him by deed containing a statement that the conveyance was made without prejudice to the rights and privileges of any other person or persons, and subject to all such rights and privileges. The premises were never enclosed or used by the public for a market or for any other purpose.

In that case it was insisted that there was no express acceptance of the dedication until the suit was brought to recover the possession, and before any express acceptance the owners of the fee had conveyed it to Dummer. The court held that the fee of the land was in Dummer, but subject to the right of possession in the public.

If the doctrine of that case be law, and I see no reason to doubt it, it follows that the appellants might have maintained an ejectment against the respondents to recover the possession of the premises in dispute, if ejectment would lie for a highway. There is a large class of cases where the acts of dedication by the owner of the fee are of such a character as to preclude the owner from retracting the dedication, even before any act of acceptance on the part of the public. *Angell on Highways* 149; *Irwin* v. *Dixion,* 9 *How. U. S. Rep.* 10; *Trustees of Watertown* v. *Cowen,* 4 *Paige* 510; *Cincinnati* v. *The Lessee of*

*White,* 6 *Peters* 431; *Wyman* v. *The Mayor of New York,* 11 *Wend.* 486, 501; *Matter of* 17*th street,* 1 *Wend.* 262; *Matter of Lewis street,* 2 *Wend.* 472; *Hannibal* v. *Draper,* 15 *Mis.* 639; *People* v. *Lambert,* 5 *Den.* 9; *Rowan* v. *Portland,* 8 *B. Mon.* 232.

In such cases the dedication is immediate; it does not wait for the act of acceptance by the public.

Whenever the public, by an express municipal act, accepts the dedication, the public duty of putting the land to the use to which it was dedicated arises, but the acts of dedication may be so unequivocal as to be decisive before that time arrives against all right of the owner of the fee to withdraw. He may be bound, although the public may yet be free. "It does not follow because there is a dedication of a public way by the owner of the soil, and the public use it, that the town or parish is therefore bound to repair it. To bind the corporate body to this extent, it is said that there must be some evidence of acquiescence or adoption by the corporation itself, such as having actually repaired it, or erected lights or guide-posts thereon, or having assigned it to the proper surveyor of highways, or the like." 2 *Greenl. Evidence,* and the cases there cited.

As the act of dedication does not of itself throw upon the corporate body the duty of repair, so the simple nonassumption by the corporate body of the duty of repair does not of necessity annul the dedication.

No good reason can be assigned why land lying under tide water may not be dedicated by the owner, with the assent of the state, as well as land not so covered. It may be and has been sold by the Associates of the Jersey Company, as the evidence in this cause shows; whatever may be granted and conveyed may be dedicated; the mere fact that it is not susceptible of immediate use because covered with water furnishes no criterion; if covered with stone, or for other reasons impassable, it might be equally unsusceptible of immediate use. I think the acts set up in de-

fendant's answer as done by the associates, in connection the Mangin map, amounted to an immediate dedication of the whole ground under water marked upon that map as Hudson street, and that whenever any part of it is filled up it becomes *ipso facto* a public highway, and that the right to enclose it and exclude the public cannot be acquired by a mere conveyance of the fee of the land from the associates. The sovereign power may, by an act of vacation, extinguish the public right in a mode prescribed by law, but in this case that has not been done.

If the perpetual use of those parts of the land held by the associates under their charter, marked upon the Mangin map as streets and squares, was to be secured to the settlers in that infant city, in what way could it be done, unless by the mode pursued by the associates?

The act dedicating Hudson street has been reaffirmed by every conveyance of every lot binding upon it; they have all referred to it as a public street; every acceptance of a deed containing such a reference has been an assent, so far as assent was necessary, if at all, to such dedication.

If the complainants, by the deeds to them, acquired the fee of the land, it was acquired subject to the public use. The right to protect and prepare it for public use as a street was vested in the appellants by their charter.

The doctrine of acquiescence, invoked by the respondents, furnishes them no protection. They did not fill up and occupy this place in ignorance of their rights; their deed estops them effectually from setting up any such defence; it contained on its face a statement of the fact of dedication.

The Associates of the Jersey Company, by their act of incorporation, had conferred upon them the power to hold the real estate conveyed by Van Vorst; to lay out streets and squares *thereon* for a city; to govern, level, and regulate the same; to order and to regulate the building of docks, wharves, and piers and storehouses. The mode

in which that power was to be exercised was not prescribed by the act; it could be exercised in any way manifesting an unequivocal intention to exercise the power conferred. An authentic map, prepared or adopted by them, laying out the premises into streets and squares, and using it thereafter as the plan of their city, was an appropriate and lawful mode of exercising the power. Such a map was made, and adopted by them, and has been filed as a public record in the county of Bergen, in which the land was situate. This court, in the case of *The Associates of the Jersey Company* v. *The Mayor and Common Council of Jersey City*, 4 *Halst. Ch. Reports*, held that Hudson street was lawfully laid out, by Mangin's map, seventy feet in width, and that the corporation of the city had no power to widen it. This decision was made upon the express ground that the power of the Associates of the Jersey Company to lay out streets was not confined to the upland purchased of Van Vorst, but existed equally in regard to the land covered by water, and because that was the fact Hudson street had been lawfully laid out. It is true that Justice Randolph, delivering the opinion of the court, says that the street so laid out was dedicated, with other streets, to the public. This leads me to remark, what is obvious upon a moment's reflection, that this case is clearly distinguishable from the ordinary cases of dedication to be found in the books.

The Associates of the Jersey Company were not only a land company owning the soil, but they also had important municipal rights conferred upon them by the sovereign power, to wit, that of laying out streets and squares. When, therefore, they laid out these streets they acted as owners of the fee in presenting the lands to the public for streets, and also as a municipal corporation in accepting them on behalf of the public, so that when the Mangin map was completed, and adopted by them as the plan of their city, the streets laid down upon it became such by an act of dedication made by the owner of the fee,

Mayor of Jersey City *v.* Morris Canal and Banking Co.

and immediately accepted by a competent authority on behalf of the public, and also by the act of laying out by legislative authority. Hudson street has become a public highway, both by dedication and by being laid out by competent municipal authority.

Another view of this case may be taken, which seems equally conclusive. It falls clearly within the principle of the case of *The People* v. *Lambert*, 5 *Denio* 9. The facts of that case were these: Warren street, in the city of Brooklyn, extended, through the lands of one Parmenas Johnson, to the East river. Prior to the opening of that street, he owned the fee of the land bounding on the river through which the street ran to the water's edge. By an act of the legislature of New York, he was authorized to construct and maintain, in the East river, wharves, docks, bulkheads, and piers in front of his lands, and to receive dockage and wharfage for the same. Under this act Johnson built docks and a bulkhead in front of his land, including that covered by the street, filling up the intervening space with earth, so as to transfer the shore of the river to the bulkheads. Johnson claimed that he had acquired a right to cut off Warren street from the East river, because he had filled in in front of his own land by legislative authority—the precise claim made by the respondents in this case for the same alleged reason. The court held that Warren street extended over the land filled in to the water's edge; that the legislature had not expressed any design to destroy the right of the public to reach the waters of the river through Warren street, and that the act should not be so construed as to work a public mischief, unless required by words of the most explicit and unequivocal import.

It is undeniable that, before the erection of the works of the respondents, Hudson street terminated upon tide water, and that the space between that and the canal basin has been filled in by the canal company and others, either rightfully or wrongfully; that Hudson street was

3 A*

lawfully laid to its then termination. Whence did the lot holders acquire the right, by filling in in front of their lots, to cut off the street from the shore, to which it always·ran, and was intended to run. The legislature never gave it, either in express terms or by necessary implication.

If the contrary doctrine should prevail, not a single street in Jersey City is secure against being closed up from access to tide water, and the inhabitants of the city must, through their city corporation, again buy their way out to the shore. The doctrine, that when the shore owner, through whose lands a street comes to the shore, fills in in front of his land, and also in front of the *terminus* of the street, the public is entitled to the extension of the street as if the land filled in were an alluvion is the reasonable doctrine, and in strict accordance with principle. By the adoption and enforcement of this doctrine, the benignant intention of the founders of this city will be carried out to its full completion.

The bill of the complainants shows that, on the thirteenth day of March, 1854, the corporation gave notice for sealed proposals regulating, curbing, guttering, flagging, and laying the cross-walks of Hudson street from Essex street *to the Morris canal basin,* including intersections; and on the twenty-first of March, passed an ordinance, which was approved by the mayor in due form of law, providing for the filling in Hudson street *between Essex street and the canal basin;* and that, on the thirtieth of September, prior to the filing of the bill, the company had notice to remove the buildings, fences, and other obstructions placed by them in Hudson street; and that, to prevent this removal, laying out and completing Hudson street by the corporation, the injunction in this cause was granted and issued.

The question, how wide the respondents' were by law entitled to make their basin; whether it can be of a greater width than their charter allows the canal to be, or is con-

fined to the width of thirty feet where it crosses or occupies the streets of the city, is not now before the court. Neither the appellants or respondents have taken any action upon the subject; it is not within the issue made by the complainants in their bill. It may well be doubted whether the limitation of the width of the canal extends to the basins authorized to be built by the company where they cross a street. But upon this point no opinion is intended to be expressed, and what has been said is rather for the purpose of keeping open than settling this question.

After an examination of the testimony given in the case, it seems very clear that the opening of Hudson street will not destroy the company's basin, or deprive them of the power to land the cargoes of their boats upon the banks of the basin on both sides of the street; the street will, according to the established grade, be three feet higher than the level of the remaining shores of the basin; but no witness expresses the opinion that the wharves of the company cannot be accommodated to the grade of the street, so as to obviate any serious inconvenience.

If the company now have the right to keep boats out of the basin, that right will not be lost by the grading of the street, nor will the *terminus* of the street, while it reremains at the north side of the basin, necessarily make that a public dock for vessels not entitled to navigate the Morris canal. The company may still control their own basin as heretofore. I cannot perceive equity or justice in giving up to the company, for mere storage and dockage, the end of a public street, and cutting off the residents of part of the city from going to the bay, and abruptly terminating the street at this point. It was never contemplated, either by the founders of the city or the legislature, and seems to be sacrificing a public right of great value and importance to the mere convenience of the canal company. They can well get along without it.

The Chancellor has assumed, as the foundation of his decison, that Hudson street, as laid down upon the Mangin map, was not legally dedicated or laid out as a public street. He admits that the act incorporating the Associates of the Jersey Company authorized them to make a plot of the premises, and ratified the dedication of the upland and surrounding waters to the purposes designated by Mangin's map; and in my judgment, this admission covers the whole ground. A dedication of the street by the associates, ratified by legislative act, was an irrevocable devotion of the land in question to public use as a highway. The power of the legislature to accept the dedication cannot be questioned. Nor is the act of dedication or ratification in any way avoided by the failure of the legislature to provide for the immediate opening of the street. A portion of land devoted by law to the purposes of a public highway does not lose the character of a highway on account of the neglect of the public authorities to discharge the duty of opening and repair.

At common law, the doctrine of the earlier cases was, that there could be no loss of the public right by mere nonuser—a highway once established must always remain such until changed or discontinued by process of law. *Angell on Highways* 21, and cases there cited. And that author states, p. 323, that the doctrine of the ancient authorities has been to some extent departed from in modern times, citing *Beardsly* v. *French*, 7 *Conn. Rep.* 125, in which it was held that nonuser of an easement of this kind for many years was *prima facie* evidence of a release of the rights to the person over whose land the highway once ran, and that although no precise time can be fixed, that there could be no doubt that the desertion of a public road for nearly a century is strong presumption that the right of way has been extinguished. *Commissioner* v. *Taylor*, 2 *Bay. S. Car. Rep.* 282; *Fox* v. *Hart*, 11 *Ohio* 414; *Rowan's executors* v. *Portland*, 8 *B. Mon.* 232, 259.

And the Supreme Court of Vermont, in *Knight* v.

*Heaton*, 22 *Verm. Rep.* 480, held that the enclosure and occupation of land within the limits of a highway for twenty years under a claim of right made title by prescription, as against the public, in the occupier. To this case I cannot yield my assent; it would render valid clear encroachments upon public highways, which in every part of our state are a source of constant complaint and vexation. Some of our highways have been so narrowed by encroachment as to be almost impassable. It is an application of the doctrine of adverse possession uncalled for and eminently disastrous to the public interests. *Henshaw* v. *Hunting*, 1 *Gray, Mass. Rep.* 203, was a case in many respects like that now before the court. The selectmen of Boston, in 1805, agreed to lay out the streets through the whole of a tract called South Boston, according to a plan drawn by Mather Withington, surveyor, and determined that all the streets which extended to the sea or salt water, on any part of the tract, should be considered as continuing in the same direction and of the same width as far upon the flats or into the sea as the right of the proprietors should extend through whose lands the streets were laid out. The premises in dispute in the case were a part of First street, as laid down upon the map.

The plaintiffs filled in and reclaimed their lot, which lay adjoining the water and flowed by the tide, and occupied it from 1825 to 1851. Like the *locus in quo* in this case it was the end of the street; the plaintiff's deeds recognise it as the street. The corporation of Boston entered and took down the plaintiff's fences in 1851.

The premises in question had never been used by the public as a street. The court held that the very nature of the right vested in the town by the laying out of the streets in South Boston rendered it impossible that there should be against them any adverse possession until an official order to open the street was made, and overruled the plaintiff's plea of adverse possession, and rendered

judgment in favor of the city. In the case now under consideration the land was covered with tide water until within four or.five years; there can be no pretence of adverse possession or evidence of abandonment.

If the doctrine of adverse possession applies to streets occupied by private individuals or public companies, so as to extinguish the easement of the public, it would be unreasonable to say that a shorter time than that fixed by the statute of limitation shall avail against the public.

I have not been able clearly to apprehend the mode by which the learned Chancellor reached his conclusion, admitting, as he does, the fundamental proposition, that the laying out of Hudson street was sanctioned by the legislature, and clearly sanctioned, as that proposition is by the case already cited decided in this court. He seems to hold, that although Hudson street was laid out by the associates upon the map, and although the appellants have adopted the map, and made their improvements in accordance with it, yet that because they have not formally assumed the duty and burthen of keeping *all* the streets designated on the *map* in repair, they cannot claim under it; that they cannot exercise such right until they assume all the burthen it imposes. Such was not the the opinion of the Supreme Court in *Den ex dem. The Selectmen* v. *Dummer*, nor is it supported by any authority. It is clearly in conflict with the cases on the subject of dedication.

The principles upon which the doctrine of dedication rests are peculiar. A dedication does not take place upon the idea that there has been a grant, for it may take place where there is no grantee in being to take at the time of dedication. *Beatty* v. *Kurtz*, 2 *Pet.* 566. A dedication is a devotion to public uses of the land, or an easement in it, by any unequivocal act of the owner of the fee manifesting such clear intention. As no grantee or body politic is necessary to accept the dedication immediately, it follows that it may be a dedication designed by the owner to be

accepted by the public in *presenti* or in *futuro*. The character and scope of the dedication depends upon the intention of the dedicator, expressly manifested or to be gathered from all the circumstances of the case. There is nothing in the nature of the legal act of dedication to prevent its being a dedication in *presenti*, to be accepted and used in *futuro*.

Almost all the instances of dedication that have been the subject of adjudication have been cases where there was no present need of the land for the purposes for which it was dedicated—where the public use was to arise entirely out of the wants of a future city yet in embryo—where it was at the time utterly impossible to carry the intentions of the donor into immediate effect—where there was, as yet, no population to use the streets or walk the parks devoted to the public, and if either a grantee to take, or a public to use immediately, had been required the dedication would have been fruitless—its object unsusceptible of accomplishment.

If dedication requires no deed, no grantee to take; if it be an act in *pais* not required to be even in writing, manifested or accompanied by an intention to devote to public use, why may not the owner dedicate land now, with the distinct understanding that it will not be wanted for public use in fifty years?

If immediate *user* by the public, or even immediate acceptance by a competent public authority, be in all cases necessary to give effect to a dedication of land to public uses, the doctrine of dedication is shorn of one its most important uses.

Much was said, in argument, of the improper motives actuating the appellants; that the street to the basin was of no public use—it was to be opened to gratify the fancy of the lot holders on Hudson street; that the object was ornament, not substantial improvement. With all this, I think, we having nothing to do. It is a great question of public right, to be decided as such.

The appellants have the right, or they have not. If they have it, the Court of Chancery cannot control them as to the time of its exercise; they are by law the judges of the exigencies of the city when they will require the use of this public highway.

I am of opinion—

1. That the part of Hudson street mentioned in the ordinance stated in the bill was dedicated by the associates, under the authority of their charter, to the purposes of a public highway.

2. That it has never been vacated or abandoned.

3. That by the ordinance in question, the city has assumed the burthen of making and repairing it.

4. That the respondents have not made out any title to the *locus in quo* discharged of the public easement.

It is manifest that at the canal basin two public highways meet; neither is entitled to destroy the other; each must yield to the other, in some degree, what would be strict legal rights, if they did not meet and collide.

The public are entitled to the use of the place in question as a public street—the canal company, as the side of their basin.

The city corporation may not, under color of the right to regulate and control streets, do any act destructive of the basin, or prevent the use of it as a canal basin for the legitimate purposes of canal navigation.

The canal company have no right to exclude the public, and occupy it as a coal yard or place for permanent storage. It is a public street, but also a public street over a canal pier, to be used by the canal company for all necessary purposes not inconsistent with the public right as a street.

The decree of the Chancellor should be reversed, and the complainants' bill be dismissed, and the case must be remanded for that purpose. No costs should be allowed, either in Chancery or in this court. The controversy concerns a right of great public importance between a mu-

nicipal corporation and a corporation having charge of a great public work.

The following opinion was read by

OGDEN, J.   It appears that the injunction restrains the appellants from making and laying out a portion of Hudson street over the northerly pier of the appellees, erected along the line of their basin, and from removing buildings from the said pier, and from interfering with the undisturbed possession and enjoyment by the appellees of their two piers and basin, and the buildings and works therewith connected.

I concur in reversing so much of the decree of the Chancellor as enjoins the city from opening, filling up, and regulating Hudson street, south of Essex street, in the line thereof, as shown on Mangin's map, as far as continuous fast land has been made either by alluvial accretions or by filling in by the appellees.   The reclamation from tide water is stated as extending to the north line of the canal basin, and the allegation has not been controverted.   By giving this vote I do not hold that the decision of this court shall authorize the apellants either to make a public dock at the margin of the basin, or to claim a right to cross the basin with the street, or to fill up with streets, or otherwise, any part of the basin, as it is *now constructed and used for navigation,* or to interfere with the navigable uses thereof which the appellees *are now enjoying.*   Whenever such rights shall be claimed and insisted on by the city, questions very different from those which are settled by this decree will be presented for the consideration of the courts.

The latter portion of the opinion read by Judge Whelpley is intended in terms to guard this qualification of our decision, and to prevent our decree from receiving such a construction as may seem to authorize an interference, through the city council, with the basin of the canal

VOL. I.                         3 B

Mayor of Jersey City *v.* Morris Canal and Banking Co.

company, or with their works on the south of the basin, or with their present navigation of the canal and basin. I am not prepared to say, after hearing that opinion read, that it does not fully express my views, yet out of caution I add my individual opinion of the extent of the power which the decree is intended to vest in the appellants.

The court (reversed without costs) the decree of the Chancellor by the following vote:

*For affirmance*—Judges VAN DYKE, VALENTINE.

*For reversal*—CHIEF JUSTICE, Judges COMBS, HAINES, RISLEY, VREDENBURGH, WHELPLEY, OGDEN, SWAIN, WOOD.