By the Court—Robertson, J.
Although what the plaintiff, by the terms of his agreement with the association mentioned in the complaint, agreed with them to do, was to furnish certain materials and do certain work, that work was not of a kind they could have given him authoity to do, nor was it peculiarly for their benefit, nor did the structure thereby produced become their property, or pass into their possession; the association did not even agree to pay him either a fixed price or the reasonable worth of the work and materials. His entering into a separate contract to do such work for those who could authorize him to do it, and whose property the sewer became when finished, although at the request of the association, could only raise an implied obligation to indemnify him; and, as an express agreement was made to do so, as well as a previous request to him to do it, it placed him precisely in the position of a mere agent, deriving no personal benefit from the agreement, except the stipulated compensation for his services in superintending the work. That position excluded the application of any rules of law which might create a liability out of mere work and labor, undertaken at the *89 request of one person, which benefited another, and was directed and accepted by the latter, and also took the case out of the statute of frauds.
It is claimed, however, on the part of the defendants, that such agreement was illegal, because it was accompanied by a condition that the plaintiff, in doing the required work, was not to interfere with the running of the cars on the railway, and also an understanding or expectation that more time than was allowed by the corporation contract would be required to complete such work “ in a manner consistent with the interests of the association in using such road,” and this too, notwithstanding such securing the use of the road, was not established to have necessarily prolonged any disturbance of the highway, and although there was no evidence to show that consulting the interests of such association prolonged the time necessary for doing the work.
Such a condition, if .illegal, undoubtedly would infect the contract by rendering the consideration for the defendants’ promise a contract which violated public policy; and nothing could save the undertaking to indemnify the plaintiff, but an abandonment of the illegal contract, and the formation of a new one, excluding the illegal promise which formed the consideration. The first question, therefore, is, whether such promise was illegal; it was if it amounted to an agreement to obstruct the highway, either without authority, for an illegal purpose, or for a longer period than was necessary. (Dygert v. Schenck, 23 Wend., 446; The People v. Cunningham, 1 Den., 524; Same v. Lambier, 5 Den., 9, and cases cited by counsel for defendants; Renwick v. Morris, 3 Hill,. 621; S. C., 7 Hill, 575.) The times and places of constructing sewers, vaults and drains, are entirely under the control of the corporation of the City of New York, (Wilson v. Mayor of New York, 1 Den., 595,) and no one can lawfully interfere with the public streets, for such purposes, except by their authority. In addition to this objection of illegality, it is claimed there is another which vitiates the contract in question, because *90 the plaintiff not only agreed, in order to benefit such association, to disturb the highway longer than was allowed by the corporation contract, but also to violate the terms of that very agreement as such. I apprehend that the part of the latter, which consists of the plaintiff’s undertaking, is a mere private contract, the violation of which subjects him to damages therefor, either generally or according to the terms of such agreement, and that it is no more sacred than any other contract for work and labor between private individuals; it may, therefore, be laid aside in considering the validity of the agreement in question.
If, however, this be an agreement to disturb the public highway longer than was lawfully authorized, so as to promote the interests'of the association at the expense of the public, it is invalid. (Merryweather v. Nixan, 2 Smith’s Lead. Cases, 297, and note; Gray v. Hook, 4 Comst., 454; Bell v. Leggett, 3 Seld., 176; Davison v. Seymour, 1 Bosw., 92.) Objections are, however, raised to the application of this principle, arising as well from a defect of evidence, as from its insufficiency to sustain the form of the Beferee’s finding; and arising even from the pleadings.
The defendants have only alleged in their answer generally that the original agreement was. illegal, and in the same paragraph proceed to enumerate certain legal reasons why it was void, such as being a collateral undertaking and not in writing, and as being without any consideration by reason of the contract with the corporation; the whole, apparently, stated as one defense. I do not understand that a general allegation that a contract was illegal would enable a party to prove every fact that might make it so; it is rather the averment of a legal result than a fact, and the enumeration of legal objections in the same paragraph would seem to be an explanation of what was meant by such illegality. The Code requires defenses to be separately stated, (§ 150.) When so stated they are to be treated as separate pleas would under the old system. (Cobb v. Frazee, 4 How. Pr., 413; 3 Code R., 43.) The *91 paragraph in question could clearly, under that system, only amount to a plea of the special matters set up in it.
But it was contended that if the contract could not be proved, without proving the whole of it, including the illegal part, such illegality could be taken advantage of, without pleading it; but I am unable to understand why. The defendant could not truly deny the making of the contract set out in the complaint, if made, and he must either set up the illegality or allow a default. If he untruly denied the making of the contract as set out, that should not enable him to avail himself of the accidental fact of the illegality appearing in the testimony. If the plaintiff could not set out the contract, without showing its illegallity, advantage might be taken of it on demurrer, and pleading other matters would possibly not deprive the defendants of the right of moving to dismiss the complaint on that ground; but it would certainly be a novelty to allow, in an action on a promissory note, under an answer denying its making, proof of usury, or that it was given for money lost at play, or any other illegal consideration, without any allegation to that effect in the pleadings.
But even if such illegality were set up in the answer, or the parties had tacitly agreed, by admitting testimony, to try the question, the Referee’s statement of the understanding, on which the defendants rely as making the contract in question illegal, is not borne out by the testimony. That proves that the parties thereto understood, which amounts to no more than that they expected, that it would take longer to build the sewer than was allowed by the corporation contract, which might very well be, without affecting the agreement with the plaintiff; and they only added that the plaintiff was to do it in the shortest possible time, and in such a way as not to embarrass the use of the road; both perfectly legitimate agreements, and the last substantially contained in the corporation contract. As it turned out, it did take longer than the contract time, and such deviation was ratified by the city authorities, who paid the plaintiff for his work. The Referee, however, *92 in his finding annexes to the expectation of the parties, that the time in the corporation contract would not be sufficient, a qualification which does not appear at all in the testimony, viz., its being done in a manner consistent with the interests of the association in using the road, and he also, by using the exceptive particle “ but,” clogs the undertaking of the plaintiff to do the work as soon as possible, with the condition that he was to so do it as not to interrupt the use of the railway; while, according to the testimony, that was only an additional stipulation, producing a manifest distinction, so far as the question of illegality is concerned.
There may be a wide difference between the time to be occupied in completing a given work, when it is conducted so as not to prejudice other interests, and when it is conducted without regard to them; and this is equivalent to a certainty, in its effect on a contract,, when it is assumed by contracting parties to exist. But even the understanding, as stated by the Referee, might not make the contract illegal, for tile plaintiff’s corporation contract requires him to preserve all rail tracks from obstruction, and gratuitously afford facilities for their preservation ; this was as incumbent on him as to build the sewer at all; and he had no right to neglect such obligation, merely in order to finish it by the appointed time; if, by observing it, he exceeded that time, it was a matter of which the city authorities were to avail themselves, and exact the penalties provided for in the contract; or they might, as they actually did, extend the time; so that even if the understanding were as stated by the Referee, it would not avoid the original agreement.
The testimony, however, narrows this point still farther; it simply establishes an understanding that the sewer would require a longer time for building than was specified in the plaintiff’s contract; but that he should build it as soon as possible, and so as not to stop the running of the cars, a perfectly innocent undertaking, and not tainting any agreement with illegality; A knowledge by both *93 parties that the plaintiff had undertaken an impossibility, and an agreement that he should carry out his obligations as nearly as he could, and without injury to the association, coiild hardly be perverted into anything unlawful. The result shows that these expectations were not unfounded, and there is no evidence that any one was prejudiced by the parties’ agreement.
So far as regards the question of illegality, the Eeferee was therefore correct in his conclusion, for the reasons already stated; but a more serious question arises, which was presented, but not fully argued, by the counsel for the defendants, as to their liability in any way for the contract of the association. The Eeferee places such liability, first, upon the written instrument of assignment of October,
° 1853, and their omission to dissent, while they were continually acquainted with the plaintiff’s work on the sewer and the neighboring street. The facts he relies on to sustain such conclusions are, the knowledge by the defendants of the plaintiff’s work as it progressed ; the presence of their officers on the road during that time ; the direction by then Superintendent to keep the track clear; the knowledge by the President of such direction, and the failure either by the partnership or the defendants to complain of such work or any delay on it.
The plaintiff’s construction of the sewer was under a contract with the city corporation, by their authority, and to be paid for by them, and the sewer became their property when completed; the defendants could not have legally interfered with such construction; the plaintiff was not their agent, had made no contract with them, and any objection on their part would have been perfectly idle; if-they had made it, and the plaintiff had stopped work in consequence, he would have been liable for all the penalties of his contract with the corporation officers, without any right of indemnity from any. one. Their silence, therefore, is not such an acquiescence as to create a liability on their part to indemnify the plaintiff, any more than the silence of any person owning property in the neighbor *94 hood. The misapprehension of law involved in the report arises from confounding the relations of the parties with those which might arise from the performance of work for the partnership, accepted by the defendants and beneficial to them; whereas the work was performed by an agent of the partnership for a third person, under a promise by the firm to indemnify him for loss, and the defendants had no right to interfere either to accept or reject it, and the benefits were no greater to them than to a thousand others. Under such circumstances nothing but an entire novation of the contract to which the plaintiff, defendants and partnership should be parties, or a new promise by the defendants, for a new consideration, would make them liable.
I apprehend the assignment by the partnership to the • defendants of property in October, 1853, could not operate as such a novation, because the plaintiff was not a party to it, and did not assent to any substitution of the defendant, as his debtors, in place of the partnership. So far as it contains any stipulations by -the defendants, it is under seal, and any action could only be on such stipulations as covenants in their name, as they are the parties interested. It is true that if such instrument contained words implying an undertaking by the defendants to pay the money due the plaintiff, the case would come within the language adopted by Judge Comstock, in the case of Belmont v. Coman, (22 N. Y. R., 438,) and the acceptance of the transfer with such words would raise a promise; but it does not, and only has the same expression as that contained in the conveyance discussed in that case,-which was held not to impose a liability on the grantor; the property is conveyed subject to the payment of certain sums, and the covenants in the grant or lease assigned’by the instrument in question are expressly thereby assumed; while this payment, and all others mentioned therein, are not. What redress the partnership might be entitled to under such instrument, for the failure of the defendants to pay the plaintiff his claim, is immaterial; it is sufficient *95 that it does not profess to give the plaintiff any rights, and that he cannot sue upon such instrument. The money due the plaintiff was not a lien upon any of the property transferred, but was entirely collateral; a transfer so made subject to such a payment, may thereby become conditional, or the sum may be part of the purchase-money, which the vendors may have a right to recover in case they have paid it, but it cannot create a contract directly between the vendees and the plaintiff, who was a stranger to, the assignment.
The complaint, it is true, alleges that by such assignment the defendants became possessed of the property mentioned therein, and agreed to pay to the plaintiff the amount agreed to be paid him by such partnership. That allegation, if not controverted in fact by the first paragraph of the answer, is a mere averment of the legal consequences of the agreement, and not of a separate and independent promise; it does not even contain any statement of any consideration for such separate promise.
There is, however, a statement in the complaint of a requisition by the defendants of the plaintiff to remove earth taken from the sewer to a great distance, and a promise thereupon by the former to pay the latter all sums expended by him in building such sewer, and keeping the track clear, as well as for his services above the amount paid by the city, both of which facts are denied in the answer. The Eeferee has not passed upon the issue so made, except as to request to cart away dirt, which he has found as a fact. The plaintiff testified that he was put to extra expense in carrying away such dirt, and it was admitted that this was done by direction of the defendants’ Superintendent, and that their President “then said to the plaintiff, it would make no difference to him ‘ as the defendants would have to pay for building the ‘ sewer.” The Eeferee does not find, from that evidence, any promise, and puts the liability of the defendants on a different ground, to wit, the assumption by the instrument of October, 1853; nor does he find whether the work so *96 done by the plaintiff came within the terms of the agreement by him with the city officers"; particularly the clause “ requiring Mm to preserve from obstruction the rail tracks, “affected by the prosecution of the work therein described” If it did it would not form the foundation of a new promise, as the corporation and the partnership would be already liable for that. It must, therefore, be referred back, to enable the plaintiff, if he can, to prove the extra work and the separate promise, or if not the latter, to recover the value of such extra work. ' , .
I have not deemed it necessary to discuss the point of illegality in regard to the offers to the city officers to do the work; the only object of requiring such bids was to protect the city; any agreement, undoubtedly, between competitors, not to bid, or to withdraw their bids, so as to prevent competition, would be subject to the same objection as if it were a public auction. But there is nothing to prevent any separate or joint contractors from making several offers, and withdrawing any they pleased, which is the most contended for here, all the bids being put in by the agents of the partnership at different rates, they retained the most favorable one. But in fact the testimony does not establish any arrangement before putting in the bids, and the lowest one was allowed to expire by not giving security. Uo facts constituting such illegal arrangement, and no illegal arrangement, was found by the Referee.
But for the reasons before given, the judgment must be reversed and a new trial awarded, with costs to abide the event of the action.