matter, and that thereafter common-law certioraris must be made returnable at the Supreme Court, general term; and thereupon amended the original writ, and directed the case to stand over to the next general term.

## DAVENPORT *a*. RUCKMAN.

*New York Superior Court; General Term, Nov.,* 1862.

LIABILITY OF MUNICIPAL CORPORATION FOR NON-REPAIR OF STREET.—USE OF HIGHWAY.—NEGLIGENCE OF BLIND PERSON. —LIABILITY OF OWNER OF TENEMENT FOR PITFALL.

A municipal corporation, having the legal power and duty and the means to construct and keep in repair their streets, are liable to a person who is injured by their neglect to make necessary repairs.

No distinction exists between sidewalks and carriage-ways in respect to the duty of the Corporation of the city of New York in this respect.

The Corporation are liable for injuries sustained by reason of an unguarded excavation or area, made within the bounds of the highway by a private person, and which the Corporation, after notice, neglect to guard or repair.

Notice to guard or repair such excavation may be inferred from the lapse of time.

A person of impaired sight, who still has enough power of sight to go with reasonable assurance of safety through the streets, if they were kept as it is the duty of the Corporation to keep them, may recover for injuries sustained by reason of an excavation which a person of good sight might have avoided.

One who comes into possession of premises upon which there is an excavation encroaching upon the highway may be regarded as sanctioning it, and is liable for an injury sustained by a passer-by in consequence of it.

The fact that he had before the accident leased the premises to another does not alter the case.

Appeal from a judgment.

This was an action brought by Clara A. Davenport against Elisha Ruckman, and the mayor, aldermen, and commonalty of the city of New York, to recover damages for injuries sustained by the plaintiff in falling into an excavation made in the sidewalk of a public avenue in the city of New York, and

not sufficiently guarded, in front of a building on such avenue, of which the defendant Ruckman had a lease.

The excavation in question was an area or cellar-way below the level of the pavement, extending on the sidewalk six feet in front of the line or side of the street, with descending steps to a cellar-way in the front wall of the building. It was not covered or railed in at the time of the accident, and had been in the same condition for some time previous. It had been once inclosed by wooden doors, and at another time by an iron railing, which had long previously been removed.

The defendant Ruckman did not make the excavation, but was the assignee of a lease for twenty-five years of the premises behind it, into which the steps in it led, and by such lease owner of the buildings to be erected during the term. They were occupied at the time of the accident by a tenant of his (Lamb), with whom he agreed to put the premises in repair. The defendant Ruckman never repaired the premises, was frequently there to collect his rents, and paid his own.

The plaintiff's organs of sight at the time of the accident were affected by disease, so as to diminish her power of vision considerably; yet she could distinguish persons and colors and objects having a distinct outline. Just previous to the accident she had encountered other risks of accident from defective vision.

A verdict having been rendered for the plaintiff, with damages, various exceptions taken on the trial were ordered to be heard first at general term.

One exception was taken to a refusal to dismiss the complaint, and others to instructions to the jury and refusals to charge as requested.

The counsel for the defendants, the Corporation of the city of New York, requested the court, among other things, to charge in substance in reference to their duty as follows:—

*First.* They were not bound to see that such an opening as that into which the plaintiff fell was closed in the daytime.

*Second.* They were not bound to see that the streets were in such a condition as to be safe for a blind person to pass without a guide.

*Third.* They were not liable unless the opening into which the plaintiff fell was of such a character as to have been

dangerous to persons in possession of their sight, and exercising ordinary care.

And in reference to the conduct and negligence of the plaintiff:—

*First.* She was bound to use more than ordinary care in passing along the sidewalk.

*Second.* It was negligence for her to walk upon the sidewalk without a guide, if she was unable to determine for herself whether it was free from obstructions or excavations.

The counsel for the defendant Ruckman requested the court to charge the jury, in substance, among other things in reference to his liability for the injury to the plaintiff: 1, That he was not in possession of the premises at the time, but his tenant Lamb was, who had been so for six days before the date of the lease to him, and was bound by his lease to keep the premises in repair; 2, That Lovett or Mitchell owned them in fee; and 3, That the defendant knew nothing of the removal of a railing adjoining the excavation in question, and was prevented from repairing by Lamb. And, also, in reference to the condition of the excavation, that the plaintiff could not recover, unless a person, with ordinary vision, using ordinary care and prudence, passing along the sidewalk in broad daylight, would be unsafe, or liable to be injured from the unsafe condition of the area; and, *lastly*, that the plaintiff was guilty of negligence in going into a public street in her condition.

The court instructed the jury as to the duty of the Corporation in reference to excavations of this kind, that it was " their duty to see that places of that description were kept in a safe condition ;" there was in the ordinance passed by them " an implied permission to construct them in the manner prescribed," and when made with such permission they are " responsible for injuries necessarily resulting from them." It is their duty to see that such places are maintained in a proper and safe condition, and in reference to their being chargeable with notice of the " dangerous condition of any such opening ;" that " if it had been a recent occurrence . . . . . an express notice of some kind" to them would be required, but where the dangerous condition of the street or sidewalk has continued for a long space of time such express notice is not necessary. They may be reasonably presumed to have become acquainted with the

condition of the street in this particular. They have ample means and every facility secured to them for fulfilling their duties, and seeing that all dangerous places in the public streets are properly guarded; they are bound to fulfil that duty, and if they neglect it are to be held responsible.

In reference to the plaintiff's negligence in going into the streets unattended in the actual condition of her organs of sight, the court charged the jury "that the circumstance that she was partially blind, and fell into the opening in the daylight," was not "of any importance" (to which the defendants' counsel excepted). The question was, "whether it was so improper and imprudent for the plaintiff to have gone into the street unattended in her then condition of sight, that it would be negligence on her part to do so." But if she "possessed sufficient sight to give her reasonable assurance that she might travel the streets safely while they were in good and proper condition, in the condition in which the defendants were bound to maintain them, she would not be guilty of negligence in going abroad unattended." The assumption in law must be that the streets are in good condition, and the question to be determined by the jury was, "Had the plaintiff sight enough to go with reasonable assurance of safety through the streets" if they were kept in good condition. To these instructions the defendants' counsel excepted.

The court instructed the jury, also, that the defendant Ruckman was to be considered the owner of the house, and it was "his duty to provide proper guards for the opening, and see that it was safely kept;" also, to "have it in a safe condition at the time the house passed from him to his tenant;" and "he was responsible whether allowed to put it in repair afterwards or not," if the premises "were in a bad, unsafe condition before he gave it to his tenant, and placed the property out of his control negligently or carelessly." To these instructions the defendant Ruckman's counsel excepted.

*Elbridge T. Gerry,* and *Wm. Curtis Noyes,* for plaintiff.

*H. H. Anderson,* for the Mayor, &c.

*E. A. Doolittle,* for Ruckman.

By the Court.*—Robertson, J.—The grounds of liability of the defendants are so different as to require a separate examination.

As regards the Corporation of the city of New York, it has been fully established in this court that they were liable to keep the streets in repair, as a municipal body, to whom certain franchises were given by their charter (Hutson a. Mayor, &c., of N. Y., 5 *Sandf.*, 289), and therefore responsible for injury caused by their failure.    Every objection to their liability was fully urged in the dissenting opinions then given, and yet the court of highest resort, on an appeal from the judgment rendered, fully confirmed the views then taken. The judge who delivered the opinion of the court in that case (9 *N. Y.*, 163), refers to the cases of Mayor, &c., of N. Y. a. Furze (3 *Hill*, 612), Adsit a. Brady (4 *Ib.*, 630), and Rochester White Lead Co. a. City of Rochester (3 *N. Y.*, 463), and says "there is no difference between a liability for negligence in constructing, and for negligence in not keeping in repair."

A similar principle had been recognized in a previous case (Hickok a. Trustees of Plattsburgh, 16 *N. Y.*, 161, Denio, J.), in the same court of last resort, reversing a decision of the Supreme Court in the same case (15 *Barb.*, 427), upon apparently the same grounds, the corporate powers of the village being the same as those of New York.    That case was followed in the subsequent case of Conrad a. Trustees of Ithaca (16 *N. Y.*, 158), and the authority of those cases remains unshaken until this day.

The learned judge who delivered the opinion in the Court of Appeals in Hutson a. Mayor, &c., of N. Y. (*supra*), says, "There is a class of cases in which both public officers and public bodies have been held not to be liable for an omission to keep highways in repair.    They are cases, however, where the powers have been so limited to accomplish the objects, that the courts have considered their duty resting in too much doubt to render them liable; or the duty was not imposed at all, by an omission to give them the means necessary to accomplish the object."    And such, I think, will be found to be the cases of Peck a. Village of Batavia (32 *Barb.*, 634), and Hart a. City of

---

* Present, Robertson, Moncrief, and Monell, JJ.

Brooklyn (36 *Ib.*, 226), which apparently relieve the city from liability.

The ground of liability of a municipal corporation for injury to third persons by their neglect of duty, is fully discussed, and elaborately elicited and passed upon, in the very able and thorough opinion of Judge Selden in the case of West *a.* Trustees of Brockport (16 *N. Y.*, 161, *note*). He shows it to arise from an actual or supposed contract between the Government and individuals, or public bodies, evidenced by prescription grants, or chartered powers, by which the latter undertake to discharge the duties arising therefrom, and thus relieve the former from the necessity of providing public officers for the purpose, who could only be punished for neglect by indictment. The right of action of individuals for injury by any neglect in such case is supposed to arise from such contract with the Government for the benefit of all.

A distinction may, therefore, be observed where the corporate powers are not sufficiently extensive to imply a contract to perform a particular duty, where there is a discretion given in regard to their exercise, or no means are furnished for performing them. Thus, in regard to the city of New York, while in the case of Mayor, &c., of N. Y. *a.* Furze (3 *Hill*, 612) it was held that the Corporation were not liable for not keeping sewers and drains, when once built by them, in repair, it was held in Wilson *a.* Mayor, &c., of N. Y. (1 *Den.*, 595), that until they were constructed that body had a discretion, and could not be compelled to build them. A similar principle was applied in Cole *a.* Trustees of Medina (27 *Barb.*, 218), in the Supreme Court, general term, eighth district, where the powers of the trustees of a village to open streets, compel adjoining owners to lay sidewalks, or pay the expense of them, and to repair themselves such sidewalks, if impassable, were held to be discretionary and judicial, not ministerial, and the village itself not liable for the failure to exercise them. It was only on that ground that such case could be distinguished in principle from Hickok *a.* Trustees of Plattsburgh (*supra*). In the case of Morey *a.* Town of Newfane (8 *Barb.*, 645), it had been previously held that a town was not responsible for any injury from suffering a highway to be out of repair, because, as commissioners of highways, they had no funds or means of

obtaining them. The same principle has been since followed in numerous cases, including those of Peck *a.* Village of Batavia, and Hart *a.* City of Brooklyn, before cited. In the last case, the learned judge held that, in regard to sidewalks, the city of Brooklyn was not liable for injuries by defects in them, because no means were furnished by its charter; and would not be, even in that case, unless actual notice was given of such defects. With all respect for that opinion, it appears to me to require too much of a party injured by a defect in a sidewalk, to be prepared to prove that he had notified the public body charged with repairing it of its existence; as the very want of such knowledge by such party would be, in most cases, the cause of their being injured. Indeed, in Peck *a.* Village of Batavia, such notice was not considered requisite. At all events, none of such cases can be held to overrule Hickok *a.* Trustees of Plattsburg, and Hutson *a.* Mayor, &c., of N. Y. The powers of the Corporation of the city of New York, and their corresponding duties, are as ample in regard to sidewalks as to carriage-ways of the streets, and their liability for their neglect must be equally as stringent (*Kent's Charter of City of N. Y.*, 99, 115, 235, 9, *n.* 31); while they are limited in the case of the city of Brooklyn. (*Laws of* 1834, 100, ch. 92, § 26, subd. 16, 20.)

The liability of the city for neglect in repairing streets was, also, upheld in Wallace *a.* Mayor, &c., of N. Y. (9 *Abbotts' Pr.*, 41), in the New York Court of Common Pleas, and in Wilson *a.* Mayor, &c., of N. Y. (1 *Den.*, 595). The liability of municipal corporations generally, in Weightmann *a.* City of Washington (1 *Black. U. S.*, 39); Innes *a.* Magistrates of Edinburgh, and Dargie *a.* Magistrates of Forfar (cited in the appendix to *Hay on Liabilities*); and is laid down in *Hay on Liabilities*, 1, 214.

No distinction, therefore, exists between sidewalks and carriage-ways in regard to the duty of the Corporation of New York. They have control of the streets within the city limits (*Montgomerie Charter*, §§ 2, 10), and are commissioners of its roads and highways by various statutes passed at intervals from 1764 to 1813. (*Hoffm. on Est. & Rev. of Corp. of N. Y.*, 386.)

The assumption by individuals of the right to make openings or inclose spaces on the highways as areas, although sanctioned by ordinances of the Corporation, cannot alter the liability of

the latter. Every illegal obstruction of the highway is a nuisance (People *a.* Laimbeer, 5 *Den.*, 9), and cannot be sanctioned by custom. (*Davies*, 89.) The parts railed in are parts of the highway until adverse possession has changed the encroachment into a title.

An excavation or obstruction in a highway, even for a temporary purpose, should be properly guarded, and notice given of the danger. (Ireland *a.* Oswego, &c., Plank-road Co., 13 *N. Y.*, 526.) In this case, there was no pretence that the excavation was temporary, or made for any other purpose except as to a separate permanent entrance to the cellar. It was an opening, therefore, for any damage arising from which, those who made it or adopted and continued it were responsible. Of course the city corporation were not liable for making or continuing it, but only after allowing it to remain after a notice of its existence, as found, by the jury from the lapse of time, and after a reasonable space of time had passed in which to repair it. In this case, both the excavation itself, and the absence of all safeguards, had existed long enough to warrant the inference of notice which the jury made under the charge of the court. (Wallace *a.* Mayor, &c., of N. Y., 9 *Abbotts' Pr.*, 40 ; S. C., 18 *How. Pr.*, 169.)

But the defendants unite in setting up as a defence that the plaintiff cannot maintain any action because she is alleged to have participated in the negligence that caused the injury. As, however, the city corporation was bound to repair and maintain the sidewalk in a safe condition to be walked on, the negligence of the injured party which should absolve them should amount to nearly absolute wilfulness. The degree of care of a pedestrian on the sidewalks is the correlative of the duty of the Corporation. If they were bound to keep them in such condition only as would make them safe for travellers in, full possession of all their faculties, it was negligence for the plaintiff, whose most important sense for discovering danger was impaired, to walk out unattended, and without using a stick to feel her way, or some equivalent protection. On the other hand, if they were bound to make and keep, after notice, the surface of the highway safe for persons of as defective eyesight as the plaintiff to use them, she was entitled to rely on the performance of that duty, and was not negligent so as to

absolve the defendants from liability. This, of course, does not affect the question of a reckless disregard of danger.

Before considering, however, the question of the duty of the Corporation, it will be useful, if not necessary, to examine the foundation of the decisions in those cases where persons destitute of forethought, such as infants, lunatics, or drunkards, or of the sense of hearing, have been injured by vehicles propelled by horse or steam. (Hartfield a. Roper, 21 *Wend.*, 615; Lehman a. City of Brooklyn, 29 *Barb.*, 234; Willetts a. Buffalo R. R. Co., 14 *Ib.*, 585; Button a. Hudson River R. R. Co., 20 *N. Y.*, 65.) In all those cases, the roads were used in a lawful way by the persons having charge of the vehicles that did the injury. They are not bound to know that the persons injured were bereft of their senses; on the contrary, they are entitled to presume that no one entitled to go in the streets would voluntarily put themselves in the way of a vehicle seen by them, or run into danger. Danger from those using a road is entirely different from that created by the road itself; against the former every one will provide, the latter they have no reason to suspect exists. In this case, the excavation was illegal, at least. (13 *N. Y.*, 526.) No one, whatever his infirmities might be, had therefore any reason to fear its existence. The cases cited, therefore, throw no light on the duty of the Corporation, and consequent degree of care to be exercised by the plaintiff. Nor does any case which holds a party liable for not putting up a light, whereby a traveller was injured, establish that the presence of light is the only criterion of proper caution.

The question therefore recurs, what persons are entitled to be protected against pitfalls on the highway, and of course what the condition of their faculties must be who are warranted in going on the highway unattended. If the rule contended for by the defendants be correct, not only are the deaf, blind, and lame, but persons subject to fits, nay, the old and infirm, and even the near-sighted, who daily traverse our streets, are deprived of all protection of the municipal guardians of the city, so far as pitfalls on the highway are concerned, even on the sidewalks. Their infirmities, instead of creating a sympathy, put them beyond the pale of the protection of the law..

The law of municipal obligations never was intended so to

embarrass the infirm and maimed in the use of the highway, if they were willing to encounter risks arising from their misfortunes, and that of the negligence of public bodies charged with the duty of providing safe highways. Those who can see, and rush upon danger with their eyes open, are justly chargeable with negligence; the purblind are entitled to rely upon the absence of a danger of a kind and in a place where the law has said there ought to be none, if those whom it has charged with it do their duty. That rule has been applied even where parties had their faculties. (Regina a. Train, 3 *Forst. & Fin.*, 27; The same a. United Kingdom Telegraph Co., *Ib.*, 73; Dargie a. Forfar, *supra; Hay on Liab.*, 208, 215.) There are no cases, probably, to be found which determine specifically the rights and duties of the guardians of the highways as to those who traverse them with diminished bodily faculties; but as those should be equally under the care of the law, the diligence of such guardians should extend to their protection also.

But it is said that the plaintiff's negligence in going into the street consisted in being then unattended, although knowing her defective vision; in other words, she did not use the proper precautions which she might have taken notwithstanding her infirmity. It seems to be conceded that if she had had an attendant it would have been sufficient care. But suppose such attendant to have been inattentive or malicious, would the plaintiff escape the imputation of negligence?* In this very case she had all the benefit of an attendant, for she asked of bystanders if the way was safe, and was informed it was. To require one in her situation to go further, to remain indoors and either starve or subsist on charity, unless she could provide herself with an attendant, because there were pitfalls on the public highway, would be a mockery.

But it is not necessary, for the determination of this case, to go so far as to insist that the guardians of the highways should have them safe for the blind. The plaintiff had some power of vision, and it was left to the jury to say whether it was sufficient to enable her to go with reasonable assurance of safety through the streets, if they were kept as it was the duty of the

---

* Compare, as to this point, Knapp a. Dagg (18 *How. Pr.*, 165); Brown a. N. Y. Central R. R. Co. (31 *Barb.*, 385).

Davenport *a.* Ruckman.

Corporation to have kept them. The qualification was more than the defendants were entitled to, and there was no request to instruct the jury what was the duty of the Corporation; both parties were willing to assume that the jury understood it, and it is very clear that it depends entirely upon what the condition is in which the Corporation was bound to keep the streets, whether the blind or those of defective vision have a reasonable assurance of safety in passing over them.

The requests of the counsel for the city corporation for instructions to the jury as to their duty in regard to the streets, were all, therefore, in any event properly overruled. They were bound to have the highway level, without excavations uncovered and unguarded, even in the daytime, and it was not necessary that the excavation should have been dangerous to persons in full possession of their eyesight. The plaintiff was not entirely blind, and the request as to such was immaterial. So, also, the request for instructions as to the plaintiff's negligence were properly refused. She was not bound to use more than ordinary care in passing along the sidewalk, or to have a guide if she was unable to determine for herself if it was free from obstructions or excavations. The court, in fact, instructed the jury that it was the duty of the city corporation "to see that such places are maintained in a proper and safe condition," and no request was preferred to have any instruction as to what such condition was. It may have been very rash for the plaintiff to encounter all the risks of the public streets unattended, even if necessity compelled her; that forms no reason why those on whom she had a right to rely should betray their trust, and leave a still greater danger added to those already existing.

The liability of the defendant Ruckman did not depend upon his possession or ownership in fee of the premises at the time of the accident. That may have made the possessors and owners also liable, but did not discharge him, nor was it necessary that he should have made the excavation originally. On the other hand, as this excavation was on the highway outside of his premises, he was not bound simply by reason of his interest in the latter to keep it in a safe condition. The excavation, steps, doors, and railings connected therewith, came into his possession with the premises, and appear to have

been used as a mode of access to the lower part of the building as an appurtenance, and he may therefore be considered as having sanctioned and adopted them as though he had originally caused them to be made. Being, therefore, an invasion of the highway, he was bound absolutely to see that no harm came from it. He leased the premises with such appurtenance, and probably had no right to exclude his tenant afterwards from its enjoyment. The Court of Appeals of this State has held, in a case on appeal from this court, that he who disturbs the surface of the highway, and makes openings in it, is an insurer of all persons who pass over the opening, however carefully protected (Congreve a. Morgan, 5 *Duer*, 495; 18 *N. Y.*, 79), and is not excused by mere proof of due care. And this court held, in the same case, that a person may adopt as his own and become responsible for an excavation made by another; which would, of course, be a question of fact. As there was evidence tending to show such adoption in this case, the verdict cannot be disturbed, unless some of the requests to charge were improperly overruled, or improper instructions given.

The charge was that it was the duty of the defendant Ruckman to provide proper guards for the opening, to see that it was safely kept, and in a safe condition when he parted with the premises. This was clearly proper. He was responsible for the injury to the plaintiff by the condition in which the opening was when the accident occurred, if it was unsafe when he parted with the premises, unless some one without his assent had rendered it dangerous in the mean time. If, however, once rendered safe after he parted with it, he probably would not be responsible for a subsequent withdrawal of any safeguards, without his consent. But if once in a dangerous condition with his sanction, he was responsible for the continuance of such condition, as well as all others who continued it, until it was rendered safe.

Every request for instructions as to the exemption of the defendant Ruckman from liability, proceeds on erroneous assumptions of the rules of law in regard to it. As matter of law, he might be liable, notwithstanding the existence of a railing at the side of the opening; and he was neither owner nor possessor of the premises, nor bound to repair or was

prevented from repairing. If he was the author of, or otherwise responsible for the existence of the cavity in the sidewalk, he became an insurer against any damage to any passer-by therefrom. The court could not, in any case, decide on the sufficiency of the railing in any event as matter of law. The responsibility of others, or hindrance of the plaintiff by others, did not impair his liability.

Many exceptions to the refusal to charge, as requested on the part of the city corporation, were not pressed on the argument, and are equally untenable with the others already noticed on which they are based.

There being no exceptions to the admission and exclusion of evidence, and no error in the charge or refusals to charge, the exceptions taken must be overruled, and judgment ordered for the plaintiff for the amount of the verdict, with costs.