By the Court,
Mohell, J.
William B. Moffat, by his will, devised his real estate to his two infant daughters, the defendants Cora and Myra Moffat. The devise was in fee simple absolute, without condition or limitation. Upon the death of the testator, the devisees became seised, as tenants in *559 common, and entitled to the rents and profits. Until the appointment of guardians of their estates, (2 R. S. 150, §§ 3,10; Vail v. Vail, 4 Paige, 317; Bradley v. Amidon, 10 id. 235,) the duty of collecting and receiving such rents and profits was imposed by the will upon the executors. But the executors took no estate whatever in the lands, their authority being a mere naked power to receive the rents, determinable at any time upon the appointment of guardians. (Cases supra.)
The action, therefore, was not maintainable against the defendant Mount, as owner, in either of the aspects in which the case was given , to the jury. He neither placed the fixture in the building, nor maintained it there. Nor does he seem, from the evidence, to have been an active or passive agent, ^producing or contributing to the injury. The owner of real .property may be liable'for the defective construction of his build- , ings or their appurtenances, without any immediate or active agency in the injury; but such liability is confined to the owner, and does not extend to agents, employees or servants of the owner.
There was no error, therefore, in dismissing the complaint, as to the defendant Mount, and the order denying a motion for a new trial, as to him, should be affirmed.
The case against the infant defendants was put to the jury upon two grounds: First. If the overflow was caused by the negligence of the defendants, they were liable ; and Second. If'the fixture was improperly constructed, or should not have been there at all ; or if all the safeguards that could possibly have been placed there, were not placed there, and the fixture was unsafe, the defendants were liable.
Upon the first proposition, it was not pretended that any act of negligence by the defendants, in person, or by their direction or authority, caused the injury. But it was claimed.. that the rule of respondeat superior applied, and that thev.ara .responsible for the negligence of their agents.^
If this case depended upon the ordinary principles applicable to principal and agent, or master and servant, and there was any evidence of negligence, it was proper to submit such ques *560 tion to the jury. A person capable in law of being a principal or master, renders himself liable for the want of skill or care of his agent or servant, the relation between such persons being upon the principle of agency. (Story on Agency, §308.) Quifacit per alium facitper se. An infant, however, is incapable in law, of appointing an agent. (Story Agency, § 6.) He cannot appdiS'aiPaltS^^^(2 R. S. 446, § 2,) nor sue or be sued, except by next friend or guardian. (Code, § 115.) JÍA~cannofgh^‘rTs^lF^lB^<°Tr^ri*!^. 116, § 1; People v. Dean, 3 Wend. 438 ;) is not liable on contract and generally has no legal capacity to’act for himself. DUcElegal incapacity, however, does not exempt him from the consequences of his tortious acts. In respect to those, he is held responsible, if doli capax when the wrong is done. JBnt snob, tortious acts must be ■.committed b-y the infant himself, or Under his immolate view, or by his direction or ajitboritv* ^shecannot create" an agency, he cannot appoint a servant, and therefore cannot delegate powers to another, nor can he guarantee or insure the fidelity, care or skill of such other.
The foundation of the rule respondeat superior, is that the principal holds out his agent as competent and skillful, and fit to be trusted, and thus, in effect, warrants his fidelity and good conduct in all matters within the scope of the agency. An infant being incapable of contracting, cannot-warrant the competency or skill, or care of a person, with whom the relation of agent cannot exist. To apply the rule, therefore, there must be an agency, and the act must be within the scope of the agency ; if not, the principal is not liable. (Paley’s Ag. 298.) So if the act be willful, the principal will not be responsible, unless it be within the general scope of authórity. (Weed v. Panama Railroad Co., 17 N. Y. Rep. 362.) All these rules necessarily include both the right and power to constitute the relation of master and servant. Such relation exists only in contract, and requires the same capacity in the contracting parties, as in the formation of any other agreement. If either is incapable of contracting, there is no mutuality, and neither is bound. (Cooke v. Oxley, 3 T. R. 653.)
*561 The result of this review of the principles of agency is, that the liability of principals for the negligence or other misconduct of their agents, arises from the express or implied authority of the latter, and the implied guaranty of the former, and has its foundation in the contract, which creates the relation, and by which it is implied that persons shall not suffer by the negligence of those they employ. (Reeves' Dom. Rel. 3d ed. 519.) In the case of an infant these principles cannot be applied. He cannot in law become a master, or be responsible as a master, for the negligence or want of skill of his servant.
In England he cannot be an innkeeper, so as to be charged on the custom of the realm, for negligence. (Bac. Ab. tit. Infancy E.) Nor can he be a trespasser by prior or subsequent assent, but only for his own act. (Co. Lit. 180 b, n. 4.) He is not responsible even for his own act, if it occurred through his unskillfulness and want of knowledge, discretion and judgment, (Campbell v. Stakes, 2 Wend. 144;) and a contract upon which he is not liable, cannot be turned into a tort, for the purpose of charging him. (Jennings v. Rundall, 8 T. R. 335. Hunger v. Hess, 28 Barb. 75.)
• The defendants in this case could not appoint either Anderson, as agent of the estate, or Grevalt, as janitor of the building ; such appointments, had they been made, would have imposed no liability upon the defendants for any negligent act of the employees.
But there is no evidence that either the agent or the janitor received his appointment from the defendants. Anderson collected the rent for Mr. Mount, the executor, and Grevalt, the janitor, was continued in service by the estate.
The case, therefore, fails entirely in connecting the defendants with any person, for whose unlawful act they can be held responsible,. The only person suspected of having let the water on, (either the janitor or the woman employed by him,) was not the agent or servant of the defendants.
But furthermore, if they were the agents of the defendants,^ their authority did not extend over ^ Gifford's apartments. Grevalt testified, that he was employed to take a general *562 superintendence of the house ; to see that the halls were kept clean, and the outer door closed. He Was employed by the occupants of rooms to clean and make fires. Gifford employed him, and he had access to Gifford’s office's by his authority and consent. There was no condition in Gifford’s lease that he should employ such persons as the landlord might select, and Grevalt, therefore, by virtue of his employment, became ^ the servant of Gifford. The services of the janitor, according to all the evidence, was confined, as respected the landjord^fQ > Theanvservices in ^the apartments of tenants. Eh was employed and paid by them, The evidence, therefore, coupled the person, whom the jury, it seems, inferred had produced or contributed to the injury, with Gifford, and not with the defendants.
But more than this^ I think the evidence of negligence was not sufficient to go to the jury.
The burden of proof was on ' the. plaintiffs, and although circumstantial evidence may be sufficient, (Holbrook v. Utica and Schenectady R. R. Co., 12 N. Y. Rep. 236,) it must be of such a character, as to lead directly to the conclusion that,, some designated person was in fault. It is not pretended that the prodTñTTirTrag^sKo^spOT^Poi11^ out ^ie person by whose neglect the water in Gifford’s office was left to flow. It was not shownwhosejiand-tuxned the faucet, nor who omitted ^to shutjfche^water off. That it was the janitor or the woman, was mere supposition" and conjecture. The only circumstance at all tending to such conclusion was that the former went into Gifford’s room to prepare the fires for lighting and afterwards let . the woman in, to clean. There was quite as much reason to suspect or conjecture that Mr. Gifford or one of his clerks had 1 left the faucet open. The urinal was for the exclusive use of [: • Gifford’s offices, and the woman was directed to obtain water for cleaning from another part of the building. The pipe to which the stop cock was attached, received its supply of water from the street main. It was proved that the water would not always rise to the faucet, owing to the lack of supply in the distributing reservoirs, and that sometimes *563 it would not run at all. It was quite possible that one of Gifford's clerks, desiring to rinse the basin, may have turned the faucet, and the water failing, left it open ; and its condition would not attract attention or excite observation. Besides, I think, the proximate cause of the overflow, was as much the tobacco leaves.and paper, which had' negligently been thrown into the basin, as the omission to shut off the draw cock. Some of the witnesses, especially Beggs, one of Gifford’s clerks, who examined it daily, having testified that the holes at the bottom, if unobstructed, were sufficient to discharge all the water from the supply pipe, even if left constantly running. Beggs further testified he was the last person who left the office, and that he examined the urinal and it was in good order, and that the faucet was' shut off. Ifj however, the water did not not flow and the pipe emitted no sound, the clerk’s attention would not probably be called to the condition of the faucet, and he simply said, on his cross-examination, that it was in order.
It seems to me, the evidence failed to designate the agent whose act occasioned the damage, and that the jury could- not conscientiously say it was the janitor or the woman, there being evidence that it might have occurred through the fault of another person.
The second proposition of the learned justice, was, that if the fixture was improperly constructed ; or should not have been there at all; or if all safeguards which could possibly be placed there, should have been placed there, and the jury believed that the urinal was unsafe, the defendants were Rabie.
If the facts were such as would render an adult owner Rabie' under this proposition, I am inclined to think such liability / would also attach to infant owners. The liability in either j case rests, if it has a foundation at all, upon the maxim sic f títere tuo, &c. and not upon any contract or obRgation implied 1 from the relation of the parties.
The principle laid down by the learned justice, follows in its scope, that class of cases where owners are held responsible as insurers, without regard to the question of negligence. *564 (Dygert v. Schenck, 23 Wend. 446. Congreve v. Smith, 18 N. Y. Rep. 79. Id. 84. Davenport v. Ruckman, 10 Bosw. 20.) In all the cases cited it was held that any use of a public highway or street for private purposes, was unlawful, and therefore any obstruction placed upon it, or any thing done below the surface, which rendered its use hazardous, was a public nuisance, and any person constructing or continuing such nuisance was responsible to the public and to individuals receiving special damage therefrom. These decisions were predicated upon the unlawful use of the highway by individuals for their private purposes, and the liability was fixed, without regard to the care and skill bestowed in erecting the obstructions. If an injury occurred it was the fault of the individual who had caused the nuisance ; and no prudence, care or skill or perfectness in construction or finish, to render it safe, would excuse the fault. As was said in Davenport v. Ruckman, (supra,) a person making openings in the highway for his private use is an insurer of all persons who pass over the opening, however carefully protected.
I think it may be doubted, however, whether the principle of these cases, applies to questions arising between landlord and tenant. The relation between such parties is founded on contract, and there cannot, in general, be an implication of duty or obligation, upon which a responsibility can attach. Hence, there can be no implied contract of warranty on the part of the landlord, that the building shall continue fit for the purposes for which it was demised j there being no covenant to repair, (Howard v. Doolittle, 3 Duer, 464,) nor an implied covenant of warranty that the premises are in a tenantable condition. (Cleves v. Willoughby, 7 Hill, 86.)
All analogy between the cases referred to and the one at bar (is lost in the fact that the fixture erected and maintained i upon the premises, was not unlaiuful, and was not per se a nuisance, and therefore the question of negligence becomes material.
The owner’s liability then, rests upon his misfeasance in *565 constructing an unsafe fixture in another part of the premises, the insecurity of which caused the damage.
It was not wholly a question whether the construction was suitable for the purpose intended, nor whether it was positively safe. Persons might differ as to both points, and there is no principle which admits a liability for a mere partial or temporary unfitness without express negligence. But the question was whether under all circumstances, at all times, with the aid of ordinary skill, and the exercise of ordinary care, the fixture was dangerous. The negligence of the party injured contributing to the injury, will defeat a recovery, however negligent the other party may be; so will the concurrent negligence of a tenant, of another portion of the building, defeat an action against the common landlord.
The fixture complained of, was put in the building when it was erected in 1852, and had remained there without alteration down to the accident, without injury to any one. It was constructed with a basin, five inches deep in the center and a foot in diameter on the top, perforated with five or six holes. Above it was a supply pipe, with a stop cock to shut off the water after using it to rinse or cleanse the basin. There was a difference among the witnesses whether the holes in the bottom of the basin would discharge all the water, if the supply was kept continually running. Beggs, whose knowledge was experimental, said they would, if unobstructed. Other witnesses were of opinion they would not. The construction of the fixture was criticised by several experts, some of whom objected that it did not contain an overflow, and others that it did not contain a supplemental flow-pipe of zinc or lead in the basin, inclining towards the waste pipe. But all the witnesses agreed, that if proper precaution was taken and the stop cock was turned off, there could not he an overflow, and that an overflow could occur only hy leaving the stop cock turned on
Then, according to all the evidence, the urinal was suitable, sufficient and safe, if it was used with care, and it became unsafe, only if it was used without care.
*566 One of the requests to charge, that if the urinal and stop cock were so constructed that an overflow could not be caused, except by the negligence of some person who failed to close it, the defendants would not be liable, it seems to me, was correct and eminently proper.
I have already endeavored to show, that the owners were not insurers, or liable at all events, without regard to their negligence. If I have succeeded, then it follows, that they are liable only for negligence, and such, I understand to be the dictum in Eakin v. Brown, (1 E. D. Smith, 36,) where Judge Woodruff says : “ If the injury result from the negligence of the owner, either in constructing or upholding the freehold, he is responsible ; ” but, he adds, “if it result from the negligence of the tenant, in any manner, he is liable.”
The liability of carriers of passengers rests as well on contract as for negligence, (Weed v. Panama R. R. Co., 17 N. Y. Rep. 362,) and a breach of a contract may result from negligence. In that class of cases the rule is strict, that the carrier warrants the passengers that his vehicle is equal to the journey, (Bremner v. Williams, 1 Carr. & P. 414,) and he is bound absolutely, and irrespective of negligence, to provide road worthy' vehicles, (Alden v. N. Y. Central R. R. Co., 26 N. Y. Rep. 102,) and to adopt all known and tested improvements for the safety of passengers. These cases rest upon the principle that carriers of persons are not only bound to a very high degree of caution, and should provide, as far as human care and foresight can go, for their security, but that they absolutely warrant their safe conveyance. Ho such principle, however, is applicable to persons standing in the relation occupied by the parties to this suit, nor can any case be found which makes an owner an insurer of the sufficiency of his structures. If, then, the fixture was suitable and safe, if used with care, no responsibility can rest upon the owner ; and if by its negligence or careless- use, it is made to cause an injury, the person guilty of such negligence must be looked to for damages.
The owner of a house is not bound to adopt all new inventions or improvements, as is required of carriers of passengers. *567 The law does not impose such a duty. Iron pipe is now much, used, instead of lead pipe, as conduits in buildings, because of danger of leakage from the latter through the gnawing of rats ; but is every landlord bound to remove his lead pipe and put iron pipe in its stead ? To require it would make him absolutely warrant the safety and sufficiency of the lead pipe, without regard to any negligence in suffering it to be out of repair or to go to decay.
From these views, if they are correct, it follows, that the whole duty of owners towards their tenants is discharged, if the water fixtures in their buildings are so constructed, that in their careful use they perform the purposes of their construction. They do not warrant or insure against their negligent use, and are not liable, merely because some person, for whom they are not responsible, turned a faucet or negligently left it open. The submission, therefore, of any question to the jury of a supposed unsuitableness or insufficiency of the structure was improper. The evidence was uncontradicted, that it was safe if used with care ; and there being no proof that the defendants left it open, or caused it to be left open, the justice should have directed a verdict for the defendants.
The order denying their motion for a new trial, should therefore be reversed and a new trial ordered as to them, with costs to appellants, to abide the event. The order denying the plaintiffs’ motion for a new trial, as to the defendant Mount, should be affirmed, with costs.