RECTOR, administrator, etc., v. PIERCE, commissioner, etc., appellant.

*Highways — liability of commissioners for negligence — Negligence per se — traveling in dark night not.*

A highway commissioner negligently left a highway bridge he had constructed in a dangerous condition.  *Held*, that the commissioner having undertaken to build the bridge was liable for negligence in its construction to those injured without fault, although sufficient funds had not been put in his hands for the purpose of building.

Defendant's intestate was killed by an accident caused by a carriage in which she was riding being driven off a bridge. The accident took place upon a dark night, and it was shown that the driver, previous to reaching the bridge, not being able to see, had allowed the horses to take their own path.  *Held*, that it was not negligence *per se* in the driver to undertake the journey in the night although very dark, nor was it so allowing the horses to choose their way.

APPEAL from a judgment in favor of the plaintiff at the Livingston circuit entered upon the verdict of a jury.

The action was brought by Myron H. Rector as administrator, etc., of Ella E. Rector, deceased, against John Pierce as commissioner of highways of the town of Mount Morris, to recover damages occasioned by the death of said Ella E. Rector, the daughter of the plaintiff, alleged to have been caused by the negligence of the defendant on account of the improper construction of a bridge over a tail race on the highway just east of Mt. Morris on the road leading to Geneseo.   It was claimed that the bridge was left without railings, or other suitable protection, and was too narrow and not properly graded.

On the 1st of January, 1870, the deceased left Geneseo with three other young persons in a carriage with two horses hired from a livery stable and drove to Mt. Morris.   They started to return about half-past seven in the evening.   It was very dark, and the driver, who was a young man, on account of the dark-

Rector v. Pierce.

ness, thought it best to leave the horses to take their own course as he passed beyond the lights of the village. The evidence leaves it uncertain how the accident occurred, but the horses, wagon and all the parties were precipitated into the water near the approach on to the bridge in question; whether before entering upon the bridge or after was not clearly established on the trial. By this accident, the plaintiff's daughter, Ellen, was drowned. She was twenty years old, and would have been twenty-one in the following March.

Much evidence was given on the trial as to the condition of the bridge and its approaches, and the question of plaintiff's and defendant's negligence was submitted to the jury, who found a verdict for the plaintiff for $1,500 damages.

Several exceptions were taken by the defendant's counsel on the trial, and to the charge of the judge, which, so far as they are material, are noticed in the opinion of the court.

*George F. Danforth*, for appellant. Defendant was not liable, in a private action, for neglect to keep the highway in repair, unless funds were furnished. *Bartlett* v. *Crosier*, 17 Johns. 389; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297; *Robinson* v. *Chamberlain*, 34 id. 389 ; *Harrington* v. *Village of Corning*, 51 Barb. 413; *Weet* v. *Trustees of Brockport*, 16 N. Y. 115; *Hover* v. *Barkhoof*, 44 id. 115. On the question of contributory negligence he cited *Murdock* v. *Warwick*, 4 Gray, 178; *Titus* v. *Northbridge*, 97 Mass. 258; *Hutchins* v. *Boston*, id. 272; *Fogg* v. *Nahant*, 98 id. 578.

*J. B. Adams*, for respondent.

MORGAN, J. The justice who tried this action, properly decided that the defendant, as commissioner of highways, having undertaken to rebuild the bridge in question, was liable for negligence in its construction to those who were injured thereby without their fault, although sufficient funds had not been put into his hands for that purpose. It was doubtless competent for the plaintiff to show that the town had put funds in the defendant's hands to rebuild the bridge, if the negligence charged had been the neglect of the defendant to rebuild it when it was required to be rebuilt for the safety of travelers; but when, as in this case, the negligence charged was misfeasance or want of care in its construction, the want of

funds would be no defense to the action. *Shephard* v. *Lincoln*, 17 Wend. 250; *Adsit* v. *Brady*, 4 Hill, 630; *Robinson* v. *Chamberlain*, 34 N. Y. 389; Shearm. & Redf. on Neg., § 168.

The plaintiff was allowed to prove how much it would cost to build a sufficient railing, to which there was an objection and exception; he was also allowed to prove the tax-roll of the town of Mt. Morris, for 1869. The defendant objected; objection overruled and defendant excepted. In my opinion the cost of building a railing was material upon the question of defendant's omission to perform his duty in providing for the safety of travelers. The jury might have excused him if the expense had been considerable and it had required considerable time to finish it. The work was commenced in September, 1869, and the mason work completed in November following. There was then a claim made by the defendant that it was the duty of the village of Mt. Morris to do the filling in, and there was some delay before the earth was filled in; so that, in fact, the bridge was thrown open to travel on the last of November. This accident occurred on the 1st day of January thereafter.

It is doubtless to be assumed that the bridge might properly be thrown open for travel before railings were completed, if suitable signals had been provided to warn travelers of danger. These improvements require time. The duty of the defendant in finishing up the work, and providing suitable guards, would depend upon circumstances. And the cost and funds in his hands at the time were matters to be taken into consideration by the jury in determining the defendant's neglect of duty in this respect.

When the question is one of negligent omission of duty by a public officer, all the circumstances under which the omission occurred should be taken into consideration by the jury to aid them in determining it. If, however, the evidence was immaterial, I do not think the defendant was prejudiced by it. It was claimed, as already intimated, that after the mason work was completed, the duty of filling in and erecting proper guards belonged to the corporation of Mt. Morris. That there is no ground for this claim is too apparent to require any further examination than a reference to the act of incorporation. Laws of 1855, chap. 498, § 7. The village authorities have no control or supervision whatever over the highway bridges in the village.

The most important question, in my opinion, is, whether it could be assumed upon the evidence, that the accident occurred through

the defendant's negligence, without fault of the driver. It is conceded that if the driver was negligent, and his negligence concurred in that of the defendant in occassioning the injury, the action cannot be maintained. If it was a question for the jury, doubtless their finding cannot be reversed by this court. There was some contradictory evidence as to the driver's mismanagement of the team as they left the hotel and before he reached the more dangerous part of the road. If the case depended upon this contradictory evidence, the finding of the jury in favor of the plaintiff would be final. But if it was negligence *per se* for the driver to leave the horses to take their own course upon this part of the public highway when it was too dark for him to see the road so as to guide them properly on the way, then the plaintiff should have been nonsuited; unless his counsel is mistaken in conceding that the driver's negligence would be a bar to the action.

In this connection it may be proper to say that if the horses had kept the traveled part of the road, there is no probability that the accident would have occurred. Was it common prudence to trust the horses to find the way? The confidence of the driver in the horses was evidently misplaced; but it may be said that if the road had been properly guarded and the bridge properly guarded, they would probably have passed over it in safety. There is no evidence that a horse can see to find his way, when the driver cannot see. If, however, a horse is familiar with the way, he may generally be depended upon to find it even when it is too dark to see it. There is no evidence that the horses were used to travel on this road, and it was, to say the least, presumptuous in those young people to depend upon the sagacity of the horses to escape the perils of a ride from Mount Morris to Geneseo when it was too dark to see the road. In *Murdock* v. *Inhabitants of Warwick*, 4 Gray, 178, it was held that when the vicious habits of the horse contributed to the accident the plaintiff could not recover.

In *Fogg* v. *Inhabitants of Nahant*, 98 Mass. 578, at the time of the accident and for sometime before, the horses were out of control of the driver, and there was nothing to show but for this fact the accident would have happened; and it was held that the town was not liable, although the place was dangerous. Due care on the part of the driver required him to keep control of his horses.

Greater care is perhaps required of a person of defective sight in traveling upon a public highway, but not extraordinary care.

Shearm. & Redf. on Neg., *supra*, § 413. It seems to have been established by the decision of the court in *Davenport* v. *Ruckman*, 10 Bosw. 20; S. C., on appeal, 37 N. Y. 568, that a blind traveler has a right to presume, and to act upon the presumption, that a highway in constant use is reasonably safe for ordinary travel. The travelers in this case were not blind, but might as well have been so. They started out in a dark night when they could not see their way. Judge HUNT, in *Davenport* v. *Ruckman*, *supra*, thought a person might drive or walk in the darkness of the night, relying upon the belief that the corporation had performed its duty and that the street or walk was in safe condition.

If this is a correct statement of the law as applied to public highways in this country, it cannot be charged as matter of law that the driver in the case at bar was guilty of negligence *per se* in undertaking a journey from Mt. Morris to Geneseo in the night time, although too dark for him to see his way. It follows, I think, that if he could prudently undertake the journey, it was not *per se* negligence for him to trust the horses to find the traveled part of the road. This was his only safety if the law permitted him to ride without a lantern, depending upon a good road.

I do not think we can say in the light of these authorities, that a traveler is negligent *per se* for trusting himself to his horses upon the public highway, in the darkest night, when the jury can decide, upon the evidence, that the accident complained of was occasioned by a diversion of his horses into a bad part of the road, which the commissioners of highways were bound to repair.

I have looked over the exceptions to the charge and fail to find any which can be available to the defendant. I should have been better satisfied if the judge had charged directly as defendant requested in his fourth proposition, that if there was want of care or negligence of the driver without which the accident would not have occurred, or if there was any want of care on the part of the driver which contributed to the accident, the plaintiff cannot recover. This was declined except as already charged, to which there was an exception. I think, however, the judge had charged the same way already and it cannot be error to refuse to repeat it. It was certainly an important proposition to the defendant, and if good law, as to which there may be doubt, might have been repeated with propriety in this case.

Other questions are discussed by the defendant's counsel as to the rule of damages in this class of actions. I do not perceive any error

in the charge in this respect. The jury were told that the plaintiff was only entitled to a pecuniary compensation for the loss of his daughter; but it is well settled that the jury, in this class of actions, have a very great latitude in fixing the amount. No authority is cited to show that the amount is to be confined to the loss of service of the child during her minority. The exception should be overruled and judgment affirmed.

*Judgment affirmed.*